A05A0889. COCHRAN v. MULLINAX.
(622 SE2d 455)

SMITH, Presiding Judge.

In this case arising out of a dispute between adjoining landowners, plaintiff Douglas Cochran appeals the trial court's grant of a

---

directed verdict in favor of defendant Phillip Mullinax. We agree with the trial court that Cochran failed to plead or prove his allegations, and we affirm.

At trial, the testimony showed that for fourteen years, Phillip Mullinax ran a poultry farm consisting of eight chicken houses on twenty acres on Oak Grove Road in Lumpkin County. Douglas Cochran, a trenching and excavating contractor, is also a residential developer and builder. He purchased a parcel of land next to Mullinax's farm, planning to build three speculative houses on it. These were the first such houses he had ever built. According to Cochran, because of septic tank issues the county required that he build the houses very close to the property line abutting Mullinax's chicken farm.

After grading began, Mullinax spoke to Cochran and objected to the construction of the houses so close to the property line. He testified that he was concerned about animals, especially "exotic birds," contaminating his chickens. He also testified that he was concerned about the eventual homeowners complaining about living so close to a chicken farm. In any event, as the first two houses were being framed Cochran discovered that Mullinax had posted a large sign on his property line. Photographs of the sign were introduced into evidence. It read:

### WARNING

- This is a chicken farm.
- It smells like a chicken farm.
- Tractor/Trailer Rigs are here every night, and sometimes all night long.
- This is not a pleasant place to live.
- Trespassers will be prosecuted fully, including children and animals.

### YOU ARE NOT WELCOME HERE
### DO NOT COMPLAIN!

Cochran acknowledged that nothing on the sign Mullinax erected was false. Someone complained to Mullinax's poultry producer about the sign, and Mullinax removed the trespassing and "you are not welcome" language on the sign at the company's request.

At approximately the same time that Cochran listed the property with a real estate agent, he noticed that the odor from the chicken farm had increased, and upon investigating, he discovered that someone had dumped piles of chicken manure along the property line. At trial, Mullinax claimed that he had simply asked an employee to "spread . . . not pile" the manure and did not know where the employee

had placed it. He testified that he spread the litter once or twice a year in order to fertilize the pastures on his property. But he acknowledged that he had instructed the employee to spread the chicken litter in that area "so that people would know what it smelled like when we spread litter."

Cochran testified that six or eight prospective purchasers looked at the property but did not make offers. Cochran, however, did not present any testimony from those prospective purchasers regarding the reasons they did not purchase the houses. Evidence was presented that the houses were also located near a day care center and a propane storage facility with two 20,000 gallon tanks. Cochran eventually sold two of the houses to an investor for "less than what [he] had envisioned when [he] first marketed the home[s] and put a price on [them]." He also built the third house for the same investor for a higher price, but without an agent's commission. The investor who purchased the houses testified that she saw the sign before she purchased the property but was not "concerned about this sign in any way." She never smelled any odor, and she bought the third house from Cochran after she purchased the other two.

A real estate appraiser who did not have any direct knowledge of the property and had not appraised it attempted to testify as to the value of the property based upon appraisals conducted by others who did not testify. Those appraisals were not tendered or admitted into evidence. The trial court correctly noted that an expert's opinion may be based only on facts known to him or admitted at trial, see *Peters v. State*, 268 Ga. 414, 415 (1) (490 SE2d 94) (1997), and it refused to allow the appraiser to testify. The trial court suggested, however, that Cochran could attempt to lay a foundation that would support an expert opinion.

Cochran himself then testified to the square footage of the houses, the method of construction, the floor plan, and the amenities and appliances installed. The real estate appraiser then was recalled and asked for his opinion on "the value of these homes as they are located on the premises sold by Mr. Cochran." He responded that "it appears to be they looked around the 130 range . . . from the data that was derived." He gave no testimony regarding what the value of the houses would be with or without Mullinax's sign or the chicken manure, or the extent to which the value had been or should have been affected at the time of sale, approximately a year earlier. He also acknowledged that many other factors in the neighborhood, including the presence of the chicken houses themselves, the propane tank farm, the day care center, and a cesspool across the street, could negatively affect the value of the property, but he did not testify regarding the effect of these factors on the value of the property.

After the close of Cochran's evidence, Mullinax moved for a directed verdict. Although the trial court chastised Mullinax for his behavior, describing it as "reprehensible" and "outrageous," it directed a verdict in favor of Mullinax, observing that Cochran had no standing on the injunction claim because he no longer owned the property, that the interference with contract claim was unsupported because he had not introduced any evidence of a contract or of interference, and that he had not shown actual damages because his real estate expert failed to give an opinion on the property's value as of the date of completion or before and after the sign was installed. Cochran appeals from the grant of directed verdict, asserting three enumerations of error.

1. Cochran first complains that the trial court erred in holding him to the terms of the pretrial order with regard to his prayer for damages because nominal damages could have been awarded by the jury. The pretrial order enumerates plaintiff's proposed damages as "(a) actual damages in such amount as to [be] proven at trial; (b) punitive damages; (c) attorneys fees and expenses of litigation;[1] (d) permanent injunction."

> It generally is recognized that, unless the pretrial order is modified at or before trial, a party may not advance theories or offer evidence that violate the terms of the pretrial order. Once entered, the pretrial order controls the subsequent course of the action unless modified at the trial to prevent manifest injustice.

(Citations, punctuation and footnotes omitted.) *Williams v. Martin*, 273 Ga. App. 562, 564 (615 SE2d 774) (2005). The pretrial order in *Williams* did not mention the theory offered on appeal, and it was never amended at trial to reflect this theory. We held that, even had it been amended, such an amendment would have been improper because the opposing party "had no opportunity to prepare a defense to this new theory. [Cits.]" Id.

Cochran acknowledges that the pretrial order did not raise the issue of nominal damages. He relies on *Ackley v. Strickland*, 173 Ga. App. 784 (328 SE2d 549) (1985) (physical precedent only), to assert that "it [was] error for the trial court to refuse to submit the question of nominal damages to the jury solely on the ground that such

---

[1] Cochran agreed that a directed verdict on his claim for attorney fees was appropriate, and that ruling is not appealed.

damages had not been specifically pled or referred to in the pretrial order." Even if *Ackley* were binding precedent, Cochran has misstated its holding.

> Under the Civil Practice Act it is not necessary to pray specifically for general or nominal damages in order to present a question for the jury as to nominal damages. *All that is now necessary is that the plaintiff raise the issue during the trial so that it may be presented to the jury.* . . . [A]n assertion of the potential recoverability of nominal damages made in the context of a hearing on a motion for directed verdict is a timely raising of the issue during the trial. . . . Since the sole purpose of a hearing on a motion for directed verdict is the determination of whether there are any jury issues in a case, such a hearing is certainly not an inappropriate time "during the trial" at which to urge the recoverability of nominal damages.

(Citations and punctuation omitted; emphasis supplied.) Id. at 785-786. Here, in contrast, Cochran never "raise[d] the issue during the trial." Id. He did not identify nominal damages in the pretrial order, did not file any requests to charge pertaining to nominal damages, and did not argue their applicability during the trial, even during the hearing on Mullinax's motion for directed verdict. Cochran cannot now claim nominal damages when he never raised the issue at trial.

2. In a two-part enumeration of error, Cochran contends the trial court erred in granting the motion for directed verdict because some evidence of damages was presented. We disagree.

In his brief, Cochran does not point to any particular evidence with regard to proof of damages. His only citation is to his own assertion that the sign "creat[ed] substantial difficulty in the sale and marketing of the two newly constructed homes on his property." But, as noted above, Cochran testified only that several unidentified individuals looked at the property but did not make offers, and no prospective purchaser testified with regard to his or her reasons for not making such an offer.

Cochran's assertion that he introduced expert opinion testimony regarding damages is not borne out by the record, nor does he direct us to any specific reference as required by Court of Appeals Rule 25 (c) (3). Not only did Cochran fail to seek damages as to the diminution in the value of the real property, the evidence he presented through his own testimony and that of the real estate appraiser failed to show that any devaluation of the property was caused by the sign or the chicken litter, as opposed to the other negative factors present. Moreover, the evidence presented tended to show no effect on the

value, as the eventual purchaser of the property testified that she saw the sign but was not "concerned about [it] in any way."

Nor did Cochran submit any evidence of lost profits, other than his speculation as to the price he "envisioned when [he] first marketed the home and put a price on it." It was undisputed that these were the first houses that Cochran had ever built and marketed on speculation. "When an owner of a business seeks to recover lost profits, that recovery can be had only if the business has a proven 'track record' of profitability. The jury is not permitted to speculate as to what the allegedly lost profits might have amounted to." (Citation and punctuation omitted.) *SMD, LLP v. City of Roswell*, 252 Ga. App. 438, 441 (2) (555 SE2d 813) (2001).

Under these circumstances, despite the assistance of the trial court in Cochran's attempts to salvage his case, Cochran failed to present any evidence that Mullinax's conduct had any causal connection to a reduced value of the realty or a negative impact on the sale of the property. The trial court correctly directed a verdict in Mullinax's favor.

3. Cochran also contends that the trial court erred in directing a verdict on the issue of tortious interference with contract without considering his claim for tortious interference with business relations. Once again, however, Cochran has failed to plead or prove his case. The pretrial order does not contain any reference to either tortious interference with contract or tortious interference with business relations, whether in the outline of plaintiff's case and contentions or in the issues for determination by the jury. Cochran requested no jury charges on either tort.

In addition, interference with contract and interference with business relations are two separate and distinct torts. During the hearing on the motion for directed verdict, Cochran's counsel described his claim as one for "tortious interference." The trial court then reviewed the elements of tortious interference with contract, and counsel did not object or assert a claim for tortious interference with business relations, responding to the trial court, "You're right." "A party cannot complain of a ruling that his own conduct procured or aided in causing. [Cits.]" *Brown v. Cronic*, 266 Ga. 779, 782 (3) (470 SE2d 682) (1996).

Finally, even if Cochran had framed his claim in terms of tortious interference with business relations, he failed to prove the elements of such a claim. As Cochran himself acknowledges in his brief,

> [t]o recover under a theory of tortious interference with business relations, a plaintiff must show defendant: (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third

party or parties not to enter into or continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury.

(Citation and emphasis omitted.) *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994). As noted above, Cochran has not shown that Mullinax's conduct induced anyone to forgo a business relationship with him, nor has he established any financial harm flowing from that conduct.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED OCTOBER 25, 2005.

*Bagwell & Corso, Benjamin L. Bagwell*, for appellant.
*William S. Hardman*, for appellee.