## A09A0848. TRIAD DRYWALL, LLC v. BUILDING MATERIALS WHOLESALE, INC.
(686 SE2d 364)

ADAMS, Judge.

In this appeal, Triad Drywall, LLC asserts that the trial court erred in granting a directed verdict in favor of Building Materials Wholesale, Inc. ("BMW") on Triad's breach of contract claim.

Previously, in *Bldg. Materials Wholesale v. Triad Drywall*, 287 Ga. App. 772 (653 SE2d 115) (2007) (*"Triad I"*),[1] this Court affirmed the jury's verdict finding BMW liable to Triad for breach of contract. The Court held that the evidence authorized the jury to find that Triad had an agreement to work on a project at Floyd College for Aviation Constructors, Inc. (the "Agreement") and that Triad was unable to perform under this Agreement because BMW breached its contract to provide materials to Triad. Id. at 775 (1). Nevertheless, the Court held that the evidence was insufficient to support the

---

[1] The facts underlying this appeal are more fully set forth in this Court's earlier opinion. *Triad I*, 287 Ga. App. at 772-774.

jury's award of $160,000 in lost profits to Triad, and it remanded the case for a new trial on the issue of damages. Id. at 777 (2).

On remand, Triad once again sought to establish damages in the form of lost profits. But after Triad presented its evidence in the new trial, BMW moved for a directed verdict. The trial court granted the motion, holding that Triad's evidence was too vague and speculative for the jury to determine damages.

Generally, "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. But remote and consequential damages, such as the claim of lost profits in this case, must be "traced solely to the breach" and must be capable of "exact computation." OCGA § 13-6-8.

Given this higher level of proof, lost profits are generally held to be too speculative for recovery. "[E]xact mathematical certainty" is not required to prove lost profits, however, where a plaintiff can show that (1) the business is established; (2) it has a history of earning profits; (3) "definite, certain, and reasonable data" exist to ascertain the amount of lost profits; and (4) "such profits were in the contemplation of the parties at the time of the contract." (Citation and footnote omitted.) *KAR Printing v. Pierce*, 276 Ga. App. 511, 511-512 (623 SE2d 704) (2005). "Nonetheless, to recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery." (Citation and footnote omitted.) Id. at 512.

Viewed in the light most favorable to Triad,[2] the evidence at the new trial showed that Triad had been in business since 1998 and was solely owned by Gadi Gal and, his nephew, Ziv Gal. Jason Toole, a certified professional accountant who provided consulting services to Triad, testified that the company had a history of profitability for the period 2003 to 2008. Toole defined profitability "simplistically" as revenues less expenses. While Toole conceded on cross-examination that Triad's tax returns reflected overall losses for the years 2003-2005, he explained that the loss figures on the tax returns were calculated after compensation was paid to Triad's owners, and thus may not accurately reflect the company's profits. He explained that in closely held corporations such as Triad, it is common practice to

---

[2] "[W]here the trial court has granted a motion for directed verdict, . . . we review the record de novo, construing the evidence in favor of the nonmovant." (Footnote omitted.) *Huff v. Dyer*, 297 Ga. App. 761, 762 (678 SE2d 206) (2009). "The standard for appellate review is the 'any evidence' test." (Footnote omitted.) *Hood v. Smoak*, 271 Ga. 86, 87 (516 SE2d 301) (1999).

pull most of the profits out of the company and pay them to the individual owners, making the amount of money a corporation can produce for its owners an indication of profit. Toole identified the amount of compensation provided the Gals in 2006 and 2007 to illustrate such potential profits. Moreover, the tax returns were prepared on a cash basis, rather than an accrual basis. Using a cash basis presentation is more likely to reflect lower profits and thus to result in the payment of lower taxes.

Gadi Gal testified that Aviation agreed to pay Triad $999,800 in connection with the Floyd College project and identified a proposed, unsigned agreement form with Aviation, reflecting that price. Gal identified the estimate he prepared of his costs in performing the work, which included a 30 percent markup factored into those costs. Based upon that estimate, Gal testified that Triad expected to make a profit of approximately $300,000 on the project. Gal also identified an exhibit of approximately 25 jobs Triad had performed, which reflected profits for the company ranging from 16 to 48 percent, with an average profitability of 36 percent. On cross-examination, however, Gal acknowledged that the amount of his estimate on the Aviation project, which totaled $1,095,172.96, exceeded the $999,800 contract price with Aviation by approximately $100,000. He explained, however, that a portion of his estimate related to the installation of stucco, which Aviation decided to award to another subcontractor. He recalled the amount for the stucco was around $100,000, but he could not "really point exactly dollar for dollar." That amount would need to be subtracted to show his actual expenses.

We find this evidence insufficient to establish Triad's claim for lost profits. Triad was required to show a "proven track record of profitability" to recover such damages. (Citation and punctuation omitted.) *Cochran v. Mullinax*, 276 Ga. App. 81, 86 (2) (622 SE2d 455) (2005). But Triad presented no evidence that it had a history of profitability during the period relevant to this case, other than a general assertion by Toole that the corporation was profitable from 2003 to 2008. Triad received a letter of intent from Aviation in 2003, began working on the project in March 2004 and ceased work a short time later when BMW failed to deliver the necessary materials. *Triad I*, 287 Ga. App. at 773-774. Although Triad was five years old in 2003, it presented no evidence showing a history of profitability prior to that time, and the company's tax returns actually reflect losses from 2003 to 2005.[3] While Toole stated that the tax losses may

---

[3] And while Gadi Gal presented evidence of the company's profit on a number of other projects, only one of these projects was shown to have any relation to the relevant time period.

be explained by accounting practices or by payment of profits to the Gals, he provided no testimony or documentation to show the amount of the Gals' compensation during that period, nor did he provide any calculation reflecting that Triad was, in fact, profitable during that time. Without such evidence, the jury could not accurately determine the corporation's history of profitability. See *Empire Shoe Co. v. Nico Indus.*, 197 Ga. App. 411, 414 (2) (398 SE2d 440) (1990) (holding similar evidence insufficient to present a fact issue on lost profits on motion for summary judgment).

But even assuming, without deciding, that Toole's general assertion of profitability was enough to create a jury issue on Triad's history of profitability, we find that Triad failed to provide "definite, certain and reasonable data to ascertain the amount of lost profits" on the job at issue. Gal testified that Triad and Aviation agreed upon a price of $999,800 for the project, but Triad failed to produce any signed contract for that amount. Although Triad introduced an unsigned agreement form reflecting a price of $999,800, Gal's estimate of Triad's cost for performing the project exceeded that amount. While Gal explained that his estimate needed to be adjusted for the stucco work Aviation awarded to a third party, he could not specify the amount of that adjustment. On appeal, Triad argues that the adjustment amount could be determined by a handwritten notation on one page of the estimate, which reads "didn't do this." That page reflects a $41,095.67 estimate for "EIFS." Triad never identified this notation for the jury or the trial court, nor did it define the term "EIFS" or explain that it equated with stucco.[4] Further, although Gal recollected that the amount of the adjustment was around $100,000, that amount is over twice the amount shown on the notated estimate page. The estimate did contain additional entries for work involving "EIFS," totaling an additional $45,577.81, but no handwritten notations appear on the pages containing those entries.[5] Accordingly, Gal could not state the amount of the necessary adjustment for the stucco work, and Triad failed to provide the jurors with any method or basis for making that adjustment themselves

The agreement on that project was signed in September 2004, and work began in March 2005. The documentation showed that another of the projects was not even contracted until 2006, and no dates were provided for the remaining projects.

[4] This Court has previously found that "EIFS" stands for "Exterior Insulating and Finish System," a kind of artificial or synthetic stucco and foam. See *Western Pacific Mut. Ins. Co. v. Davies*, 267 Ga. App. 675, 677 (1) (601 SE2d 363) (2004).

[5] Additionally, we note that Gal's testimony regarding the stucco adjustment is belied by the unsigned agreement form itself, which suggests that the agreed-upon price of $999,800 included the installation of stucco. Exhibit "A" to that document describes the "Specific Scope of Work" by Triad to include the installation of "[a] complete EIFS system, including, but not limited to: studs, track, fasteners, insulation, gyp board, lathe, prime coats and finish coat."

and thus for determining Triad's costs. "While [Triad] was not required to prove its damages to the exact dollar, it was required to provide some rational basis of computation." (Citation omitted.) *Tri-State Systems v. Village Outlet Stores*, 135 Ga. App. 81, 85 (2) (217 SE2d 399) (1975).

We find, therefore, that Triad failed to establish its damages with the specificity required under Georgia law. Although Gal testified that his estimate included a 30 percent markup, and the company hoped to recognize that percentage as profit, Triad failed to provide the jury with "sufficiently specific guidelines" for making an accurate calculation of its actual lost profits. *Tri-State Systems*, 135 Ga. App. at 85 (2). "Facts must be proved, data must be given which form a rational basis for a reasonably correct estimate of the nature of the legal injury and of the amount of the damages which resulted from it, before a judgment of recovery can be lawfully rendered." (Citation and punctuation omitted.) Id. Given the absence of such evidence in this case, we affirm the trial court's grant of BMW's motion for directed verdict.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 4, 2009.

*David J. Merbaum*, for appellant.
*Dock H. Davis*, for appellee.