**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 1, 2024**

# In the Court of Appeals of Georgia

A23A1262. LATIUM USA TRADING, LLC v. SMITH.

MILLER, Presiding Judge.

In this contract case involving the sale of allegedly defectively installed windows, the seller, Latium USA Trading, LLC ("Latium USA") seeks review of the trial court's entry of a default judgment in favor of the buyer, Janay Smith. On appeal, Latium USA argues that (1) the judgment is void for lack of personal jurisdiction; (2) the trial court erred by denying its motion to open the default; (3) the trial court awarded speculative damages unsupported by the evidence; and (4) the trial court erred by failing to apportion fault and damages. Upon a thorough review of the record, we reverse the trial court's award of loss of use damages because the method used to

calculate them was improper. We reject the remainder of Latium USA's arguments and otherwise affirm the trial court's judgment.

According to Smith's complaint, Latium USA is a Delaware limited liability company that also goes by the name "All Seasons" or "Four Seasons." In August 2020, Smith contacted Four Seasons to purchase specialty windows for sunrooms that she was building at her house in Atlanta, Georgia, in the place of two existing decks. Four Seasons referred Smith to their installer, 2HIRE US, LLC ("2HIRE"), and 2HIRE came to Smith's house to assess the work and issue an invoice. Smith entered into a contract with 2HIRE, wherein various construction and installation work was supposed to be completed on the sunrooms using windows provided by Four Seasons, and Smith received invoices from 2HIRE to complete such work. By 2022, after Smith paid the full amount due of $85,365.20, however, her decks had been demolished without work on the sunrooms being substantially near completion, no windows had been delivered to her house, and 2HIRE and Latium USA failed to respond to her subsequent notice of construction defects.

Smith filed the instant complaint, alleging claims of breach of contract and negligence against Latium USA and 2HIRE as well as a claim for fraud against Latium

2

USA, 2HIRE, and 2HIRE's manager Keith Kelchner, and she also sought attorney fees. Smith served Kelchner and 2HIRE, but they failed to timely respond to the complaint. Smith also served Latium USA via its registered agent in Wilmington, Delaware, and it also failed to timely respond to the complaint. Smith therefore moved for a default judgment against all defendants. In January 2023, two months after the time to file the answer had lapsed, Latium USA filed a motion to open default, arguing that the trial court lacked personal jurisdiction over it because it did not conduct any business in the state of Georgia and did not have the requisite minimum contacts with Georgia. Following a hearing, the trial court denied Latium USA's motion to open default and granted Smith's motion for a default judgment against all defendants. The trial court first concluded that jurisdiction was proper over Latium USA and that Latium USA was a proper party to the suit. The trial court then entered judgment in the amount of $209,793.23, jointly and severally against 2HIRE, Latium USA, and Kelchner, with said damages consisting of the $85,365.20 that Smith had paid, $11,100 in damages to her property, $599 in expert fees, $12,947.75 in attorney fees, and $110,784.23 for the loss of use of her property. This appeal followed.[1]

---

[1] 2HIRE and Kelchner did not join Latium USA's notice of appeal, and so Latium USA is the only defendant on appeal.

1. Latium USA first argues that the default judgment against it must be set aside because it is void on its face for lack of personal jurisdiction. Latium USA argues that it is not a resident of Georgia and that none of the provisions of Georgia's long-arm statute apply to give the trial court jurisdiction over it. We determine that the trial court properly exercised personal jurisdiction over Latium USA.

"A judgment void on its face may be attacked in any court by any person." OCGA § 9-11-60 (a). "The Supreme Court of Georgia has defined the term 'void on its face,' as used in this subsection to mean 'those judgments which lack either personal or subject matter jurisdiction.' Therefore, collateral attacks on judgments are limited to circumstances where the trial court lacks either subject matter or personal jurisdiction." (Citations and punctuation omitted.) *Walker v. Blackwell*, 259 Ga. App. 324 (577 SE2d 24) (2003).

"During a hearing on the determination of jurisdiction, in personam jurisdiction must be proven by a preponderance of the evidence." (Citation omitted.) *Carter v. Heritage Corner, Ltd.*, 320 Ga. App. 828, 830 (2) (b) (741 SE2d 182) (2013). "A defendant moving to dismiss for lack of personal jurisdiction bears the burden of

proving the absence of jurisdiction." (Citation omitted.) *LG Chem, Ltd. v. Lemmerman*, 361 Ga. App. 163 (863 SE2d 514) (2021).

Under Georgia's long-arm statute, a Georgia court "may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she [t]ransacts any business within this state[.]" OCGA § 9-10-91 (1). This subsection "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State. . . . to the maximum extent permitted by due process." (Citation and punctuation omitted.) *Innovative Clinical & Consulting Svcs., LLC v. First Nat. Bank of Ames*, 279 Ga. 672, 675 (620 SE2d 352) (2005).

> Regularly doing or soliciting business in the state, deriving substantial revenue from goods or services in the state, having agents or representatives or officers or employees in the state, maintaining an office in the state, and having subsidiaries or business affiliates in the state are factors most directly relevant to the existence of general jurisdiction. Factors such as regularly doing or soliciting business, or deriving substantial revenue from goods or services, in this state may, however, also be relevant in determining whether sufficient minimum

5

contacts exist for the purpose of supporting specific jurisdiction, where such activities relate to the suit at hand.

(Citations omitted.) *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 521-522 (1) (631 SE2d 734) (2006).

In determining the boundaries of due process, we must apply the following three-part test: [j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

We look to the first two factors to determine whether a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction. If such minimum contacts are found, we move to the third prong of the test to consider whether the exercise of jurisdiction is reasonable—that is, to ensure that it does not result solely from random, fortuitous or attenuated contacts. Our Supreme Court has explained that nothing in paragraph (1) of the Long Arm Statute requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State. And Georgia allows the assertion of long-arm jurisdiction over nonresident defendants based on business conducted through postal, telephonic, and Internet contacts.

(Citations and punctuation omitted.) *Pascarelli v. Koehler*, 346 Ga. App. 591, 593-594 (1) (816 SE2d 723) (2018).

In this case, Smith argued that personal jurisdiction was proper over Latium USA because of the information provided on its website and its actions over the course of her dealings regarding her sunroom. Smith testified at the hearing that she found Latium USA through their advertisements on the internet. Smith presented evidence of Latium USA's Facebook page, which states that it helps customers "[f]rom initial design and consultation all the way through the installation of their new space[.]"[2] Latium USA's website stated "[t]he Latium USA group of companies has a presence in every state and province throughout the USA and Canada serving more than 5,000 dealers, franchises and independent contractors." Smith testified that she contacted Four Seasons over the phone, and they referred her to 2HIRE, whom they

---

[2] Latium USA argues that we should not consider this evidence because it was only introduced after the trial court denied the motion to open default. Given that we are reviewing whether the judgment is void for lack of personal jurisdiction, we must consider the record as a whole to determine whether jurisdiction exists, including this evidence that was introduced during the damages part of the hearing. Cf. *G & H Constr. Co. v. Daniels Flooring Co.*, 173 Ga. App. 181, 182 (1) (325 SE2d 773) (1984) ("[O]nce a default judgment has been entered in this state, the issue becomes not whether personal jurisdiction and venue were properly pled, but whether they in fact existed.").

referred to as their local "franchise/dealer." In the course of Smith's dealings with 2HIRE, Kelchner told her that he "was just the installer," that he didn't make the glass or design the glass, and that he just sent the measurements to Latium USA and they would send the windows and the equipment. After Smith encountered problems with 2HIRE, she reached out to Latium USA, and their customer affairs department reached out to her and visited her property. The customer affairs representative told her that "he would make sure that 2HIRE did the right thing, that they would either bring a new team in to fix it within 90 days or he would make sure that [Kelchner] gave [her her] money back."

As an initial matter, Latium USA argues at length on appeal that it is a separate corporate entity from Four Seasons, which it argues is a subsidiary of Latium USA, and that the trial court therefore erred to the extent it attributed any actions by Four Seasons to Latium USA. On this question, however, there was competing indications in the record. Smith's complaint, the allegations in which stand admitted at this juncture due to the default, alleged that Four Seasons was merely a trade name of Latium USA, and, in response, Latium USA's Chief Financial Officer averred in an affidavit that "Latium [USA] is not . . . associated with Four Seasons Sunrooms."

Latium USA's website vaguely describes "Four Seasons Building Products" as one of its different "business models," and Smith's interactions with a customer affairs representative indicate that the customer affairs representative used a Latium USA email address with a Four Seasons signature block. Given that there was at least some evidence in the record that Latium USA and Four Seasons were the same entity, the trial court was therefore entitled to resolve this fact issue against Latium USA. See *LG Chem, Ltd.*, supra, 361 Ga. App. at 163 ("If the trial court conducts an evidentiary hearing [on personal jurisdiction], it may resolve disputed factual issues, and we will show deference to those findings.") (citation omitted).

As to the ultimate question of personal jurisdiction, we ultimately determine that the evidence in the record was sufficient to establish personal jurisdiction over Latium USA. Specifically, we conclude that the evidence showed that Latium USA "transact[ed] business" in Georgia through its retention and selection of 2HIRE as its agent and "dealer/franchise" in the Atlanta area. Although Latium USA argues at length that it did not transact business in this case because it was not a party to the contract between Smith and 2HIRE, it is readily apparent from the record that Latium USA had an agreement with 2HIRE, a Georgia limited liability company that provided

9

services in Georgia on Latium USA's behalf. See *American College Connection, Inc. v. Berkowitz*, 332 Ga. App. 867, 872 (775 SE2d 226) (2015) (noting that "the term 'agent' in the minimum-contacts context under OCGA § 9–10–91," does not refer to "the traditional principal-agency theory of respondeat superior" but is rather "concerned with whether a forum state may exercise personal jurisdiction over a nonresident defendant based upon the minimum contact theory. And with the relaxation of the due-process criteria, the jurisdictional distinction between agents and independent contractors has begun to fade.") (citations and punctuation omitted). This case also involves the shipment of windows from Latium USA worth at least $60,000. See *Aero Toy Store, LLC*, supra, 279 Ga. App. at 521-523 (1) (discussing cases involving the sale of goods into the interstate flow of commerce and concluding that a case involving the sale of cars worth thousands of dollars to Georgia residents "differed in both kind and extent" from cases involving de minimis and minor sales of goods). Smith's claims against 2HIRE and Latium USA also "arise out of" that contact with Georgia. Given this evidence, and given that it was Latium USA's burden to prove the absence of jurisdiction, we cannot say that the trial court erred in determining that Latium USA had minimum contacts with Georgia such that the

exercise of personal jurisdiction was proper. See id. at 522-524 (1) (jurisdiction was proper over a foreign dealer who sold a car to a Georgia resident through a website). Compare *Pascarelli*, supra, 346 Ga. App. at 596-598 (1) (jurisdiction was not proper over a Wyoming hotel merely because Georgia residents could reserve a room at the hotel over the internet through another company's website).

Finally, we conclude that the exercise of jurisdiction in this case does not offend traditional fairness and substantial justice. We note that at the damages hearing, Latium USA's counsel represented that Latium USA was registered as authorized to do business in Georgia until 2021, and so Latium USA was legally considered a Georgia resident when many of the underlying events in this case occurred.[3] See generally *Ward v. Marriott Intl., Inc.*, 352 Ga. App. 488, 491-492 (2) (a) (835 SE2d 322) (2019) (discussing our caselaw holding that a foreign corporation authorized to do business in Georgia is considered a Georgia resident for the purposes of personal jurisdiction). In this context, this was an admission of a fact, and "[a]n admission in

---

[3] Because we determine personal jurisdiction at the time the complaint is filed, *Classic Commercial Svcs., Inc. v. Baldwin*, 336 Ga. App. 183, 185-186 (1) (784 SE2d 44) (2016), and Latium USA was apparently no longer registered to do business in Georgia at the time the complaint was filed in 2022, this fact by itself does not conclusively prove personal jurisdiction.

11

open court is an admission in judicio; a judicial admission is conclusive." (Citation omitted.) *Rhone v. Bolden*, 270 Ga. App. 712, 715 (2) (608 SE2d 22) (2004). Because Latium USA was therefore a Georgia resident during some of the events underlying the complaint, we cannot say that it is fundamentally unfair for Latium USA to be hailed into Georgia court based on its transactions with Smith.

"Under these circumstances, we cannot say that the trial court had no basis for finding that [Smith met her] burden of showing that" Georgia had personal jurisdiction given that there is at least some evidence in the record to support its conclusions. *Carter*, supra, 320 Ga. App. at 831 (2) (b). We therefore conclude that the judgment is not void on its face.

2. Latium USA next argues that the trial court abused its discretion by denying its motion to open default. It argues that it set out a proper case to open default based on the trial court's lack of personal jurisdiction. We discern no abuse of discretion.

> Under OCGA § 9-11-55 (b), a prejudgment default may be opened on one of three grounds if four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case; the four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. This court has previously held that the

12

showing required by this Code section to be made under oath includes the showing of a meritorious defense. Generally, the opening of a default rests within the sound discretion of the trial court. However, compliance with the four conditions is a condition precedent; in its absence, the trial judge has no discretion to open the default. The sole function of an appellate court reviewing a trial court's denial of a motion to open default is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case.

(Citations and punctuation omitted.) *Stewart v. Turner*, 229 Ga. App. 119, 121 (2) (493 SE2d 251) (1997).

Here, as we concluded in Division 1, the trial court properly exercised personal jurisdiction over Latium USA. Latium USA does not argue, and did not argue below, that it presented a proper case to open default for any other reason.[4] Latium USA did not provide an explanation for its failure to file a timely pleading, and it does not contend that Smith would not be prejudiced by opening the default. See *Bowen v. Savoy*, 308 Ga. 204, 208-209 (839 SE2d 546) (2020) (noting that the proper case inquiry is "intensely fact-specific" and that factors to consider include whether the

---

[4] Although Latium USA argues that it presented a meritorious defense that Smith failed to state a claim of relief against it, it does not argue that this other defense represents a "proper case" to open default.

plaintiff will be harmed or prejudiced by opening the default and whether the failure to file a timely answer resulted from willful or gross negligence). We emphasize that our review of a ruling on a motion to open default "is highly deferential and we will reverse only if the trial court manifestly abused [her] discretion." *Kittrell v. Dream Builder Investment, Inc.*, 354 Ga. App. 687, 688 (1) (840 SE2d 461) (2020). We conclude that Latium USA has not shown that the trial court abused this broad discretion.

3. Latium USA next argues that the evidence presented at the damages hearing was insufficient to support the amount of damages the trial court awarded Smith for the loss of use of her property, alleging that the calculation method the trial court used was erroneous and too speculative to support the amount. We agree.

"[P]roof of amount of damages should not be made upon guesswork, conjecture, or speculation, but should be established with reasonable certainty." (Citations omitted.) *Doughty v. Simpson*, 190 Ga. App. 718, 721 (3) (380 SE2d 57) (1989). In cases such as this, damages for the delay in performance of the contract, unless excused or waived, most often take the form of loss of use of the property involved. Id.

> [The] Restatement [of Contracts] clearly sanctions damages for any loss including incidental or consequential loss, caused by the breach where the amount caused by delay of use of the property is provable with reasonable certainty. If the amount of a loss in value of the property cannot be proved with reasonable certainty, the injured party may recover damages based on rental value or interest on the value of the property.

(Citations, punctuation, and emphasis omitted.) Id.

Here, the trial court calculated $110,784.48 in damages to Smith for the loss of use of her deck. This is the amount argued for at the damages hearing by Smith and her counsel. Smith calculated this amount by first starting with the value of her entire home, which she testified was $1,125,000 based on estimates from real estate websites such as Zillow and Trulia. She then took that amount and divided it by the amount of square feet of her property (10,407) to obtain an estimate that her property was valued at $108.10 per square foot. She then multiplied that number by the square footage of her deck space (559), to obtain $6,427.90 as the value of her deck space, and then she multiplied that figure by 22 months, the amount of time from the demolition of her decks in April 2021 to the time of the hearing in January 2023.

We conclude that this damages calculation was defective for several reasons. First, although using the dollar amount per square foot may be an acceptable way of valuing property generally, see, e.g., *Ga. Dept. of Transp. v. Crumbley*, 271 Ga. App. 706 (610 SE2d 663) (2005) (discussing valuations of unbuilt property using a dollar value per square foot), in this context, we cannot say that it is an appropriate way of calculating the value of Smith's deck with specificity. Such a calculation method necessarily assumes that the value of Smith's deck space is roughly the same as the entirety of the rest of Smith's property, a premise that we cannot accept without more evidence in the record to support an inference that such a valuation is an appropriate way to value the deck space itself. Cf. *Doughty*, supra, 190 Ga. App. at 721 (3) (expressing doubt that "an exact value can be placed on the loss of use of" the appellant's basement, tennis court, bar, recreation room and spa for an extended period of time and writing off some of the damages awarded therefor as too speculative). Indeed, at the hearing, Smith testified among other things that she had a $250,000 to $300,000 glass structure erected on her property, that her house was four stories tall with two stories being "all marble," and that she also has a 500 square foot movie theater in her house. It is thus readily apparent that some parts of Smith's

property are significantly more valuable than others, so we cannot say that using a simple method like the dollar amount per square foot of Smith's entire property would determine the value of her deck space with the required specificity to calculate the damage for the loss of Smith's use of her deck space.

Furthermore, even if we accepted Smith's calculation of $6,427.90, that number was calculated based on the *total* value of her home, not the rental value, and so that figure would represent the *total* value of her deck space. This is not an appropriate way to calculate the *monthly* damages to Smith for the loss of her use of her deck. The Supreme Court of Georgia has cautioned that "loss of use damages are only recoverable if the [property] was impaired but not destroyed. If the property is destroyed, then the damages would be the full market value of the property at the time of the impairment or loss[.]" *MCI Communications Svcs. v. CMES, Inc.*, 291 Ga. 461, 463 (728 SE2d 649) (2012). Therefore, "the maximum recovery for a repairable property including loss of use may not exceed value before the injury. This ceiling removes temptation for a party to seek to make a profit out of the unfortunate occurrence and at the same time makes [her] financially whole."(Citations omitted.) Id. Therefore, even if we accepted Smith's testimony that her deck space is worth

$6,427.90 based purely on a dollar value per square foot of her property, the trial court's award of $110,784.48 well exceeds this fair market value of her deck and was thus excessive for loss of use damages.

Thus, we cannot say that the method the trial court used to calculate Smith's loss of use damages was proper and determined the damage to Smith with reasonable certainty. The parties also do not direct us to any evidence in the record establishing the alternative measures of value we have previously approved of – namely, the rental value of the deck space or any interest accrued on the value of the property. *Doughty*, supra, 190 Ga. App. at 721 (3). We must therefore reverse the trial court's award of loss of use damages. See *Triad Drywall, LLC v. Building Materials Wholesale, Inc.*, 300 Ga. App. 745, 749 (686 SE2d 364) (2009) (directed verdict on damages was proper where plaintiff failed to provide the factfinder with sufficiently specific guidelines for making an accurate calculation of its actual damages).

4. Finally, Latium USA argues that (1) the trial court erred by finding that the defendants were jointly and severally liable; (2) the trial court erred by failing to apportion damages between the defendants as required by OCGA § 51-12-33 (b); and (3) the trial court erred by failing to sort out which claims the damages were based on.

Latium USA argues that it raised these issues below, or at least preserved them for appeal, based on counsel's closing argument that "the court should look at these [damages] numbers closely and determine which one of them are double damages, *if any damages are attributable to Latium*." We conclude that this offhand and tangential remark by counsel was insufficient to raise these issues below or to present an objection, and we decline to address them for the first time on appeal. See *Safe Shield Workwear, LLC v. Shubee, Inc.*, 296 Ga. App. 498, 501 (2) (675 SE2d 249) (2009) ("[A]bsent special circumstances, an appellate court need not consider arguments raised for the first time on appeal.") (citation omitted); see also *Thomas v. State*, 369 Ga. App. 386, 387 (893 SE2d 785) (2023) ("[O]bjections must be made with specificity to enable the trial court to intelligently rule on the objection and to create a clear record for the appellate court. Failure to raise [an] issue deprives the trial court of the opportunity to take appropriate remedial action and waives appellate review of any alleged impropriety.") (citations omitted). Latium USA apparently argues that we can nevertheless address its arguments based on the principle that "a party is free to contend on appeal that the evidence is insufficient to support a verdict even if the party failed to" raise evidence sufficiency in the trial court. (Citation and punctuation

omitted.) *Redmon v. Daniel*, 335 Ga. App. 159, 163 (1) n.5 (779 SE2d 778) (2015). However, Latium USA's arguments in this enumeration are not questions of evidence insufficiency, and so this principle is unavailing.

Accordingly, we reverse the trial court's award of loss of use damages, but we otherwise affirm the trial court's final default judgment.

*Judgment affirmed in part and reversed in part. Mercier, C. J., and Hodges, J., concur.*