**BARTON SOUTHERN COMPANY, INC., Plaintiff,**

v.

**MANHOLE BARRIER SYSTEMS, INC., and JFC Company, Defendants.**

**No. CIV.A.1:03–CV–3929–W.**

United States District Court, N.D. Georgia, Atlanta Division.

April 30, 2004.

Carl M. Davis, Baker, Donelson, Bearman, Caldwell & Berkowits, P.C., Atlanta, GA, for Plaintiff.

John P. Bostany, The Bostany Law Firm, New York City, Albert G. Dugan, Jr., Cozen and O'Connor, Atlanta, GA, for Defendant.

1. Because this case is before the Court on a motion to dismiss, the allegations contained in the Complaint have been accepted as true, and the facts have been construed in the light

## ORDER

HUNT, District Judge.

Before the Court in this trademark infringement action is Defendant Manhole Barrier Systems, Inc.'s motion to dismiss [3–1] or transfer [3–2].

## BACKGROUND[1]

Plaintiff Barton Southern Company, Inc. ("Barton Southern") is a Georgia-based business that sells manhole security devices which secure entrances to manholes and deter passage of contaminates into manholes. In connection with that business, Barton Southern owns of the trademarks LOCKDOWN–LOCKDRY, LOCKDOWN, and LOCKDRY.

Defendant Manhole Barrier Systems, Inc. ("MBS") is also in the business of distributing protective devices for manholes. MBS has only three employees, Albert Garguilo and two others, and its offices are located in Mr. Garguilo's New York home. MBS has approximately twenty customers, none of whom is located in Georgia. According to Mr. Garguilo, MBS has not solicited, nor has it received, any purchase orders from anyone in Georgia at any time.

In October 2000, Garguilo contacted Barton Southern requesting information about its products and indicating that he was interested in becoming a distributor of Barton Southern's products. Later that month, Garguilo ordered one LOCKDOWN entrance-deterring cap. In November and December 2000, Garguilo again contacted Barton Southern requesting prices for quantity purchases of Barton Southern's products. On December 7, 2000, Garguilo purchased fifteen LOCK-

most favorable to Plaintiff. *See ICA Constr. Corp. v. Reich,* 60 F.3d 1495, 1497 (11th Cir. 1995).

DOWN–LOCKDRY manhole security products from Barton Southern, and then in March 2001, Garguilo telephoned Barton Southern to discuss the possibility of selling Barton Southern's products in South America. Each time that Garguilo contacted Barton Southern, he did so on behalf of a business entity known as Meydeg Machine Company, which is also located in New York.

In March 2001, Garguilo registered the Internet Domain Name www.manholebarriersystems.com and began using the website to advertise MBS's manhole protection devices. On December 7, 2002, Defendant JFC Company ("JFC") registered the Internet Domain Name www.LOCKDOWN-LOCKDRY.com., which allegedly infringes Barton Southern's registered trademark LOCKDOWN–LOCKDRY. According to the Complaint, the LOCKDOWN–LOCK-DRY.com website is tied through computer codes to the manholebarriersystems.com website. Barton Southern claims, upon information and belief, that Defendants MBS and JFC are working together with the willful intent to trade and capitalize on Barton Southern's goodwill and reputation by infringing Barton Southern's trademarks.

On December 18, 2003, Barton Southern filed this action against MBS and JFC, claiming violations of state and federal trademark infringement laws. In the present motion to dismiss, MBS argues that the Court does not have personal jurisdiction over MBS or JFC because there are insufficient contacts with the state of Georgia to satisfy the due process requirements of the United States Constitution. The Court agrees.

## ANALYSIS

■ A federal court has personal jurisdiction over a nonresident defendant to the extent permitted by the forum state's long-arm statute. The Georgia long-arm stat-ute provides for the exercise of personal jurisdiction over any nonresident who:

(1) Transacts any business within this state; (2) commits a tortious act or omission within this state . . .; (3) commits a tortious injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; [or] (4) owns, uses, or possesses any real property situated within this state . . . .

O.C.G.A. § 9–10–91. The statute confers jurisdiction to the "maximum extent permitted by due process." *SES Indus., Inc. v. Intertrade Packaging Mach. Corp.*, 236 Ga.App. 418, 420, 512 S.E.2d 316 (1999). Due process requires that the nonresident must "have fair warning that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Id.* In determining whether the nonresident was provided with fair warning, courts consider whether the nonresident's conduct and connection with the forum state are such that the nonresident should reasonably anticipate being haled into court there, whether the nonresident acted to avail itself of the forum state's law, whether the claim relates to those acts, and whether the exercise of jurisdiction is reasonable. *Id.*

In its motion to dismiss, MBS argues that Defendants have no contacts whatsoever with the Northern District of Georgia, other than the operation of MBS's Internet website. Barton Southern responds that personal jurisdiction is established by both the MBS website and by Mr. Garguilo's contacts with Barton Southern in late 2000 and early 2001. The Court will address these contentions separately.

## 1. Personal jurisdiction based on the MBS website

■ In discussing whether the MBS website provides the basis for personal jurisdiction, both parties rely upon *Zippo Manufacturing Company v. Zippo Dot Com,* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997). In *Zippo,* a district judge in the Western District of Pennsylvania first enunciated that court's influential "sliding scale" model for applying personal jurisdiction principles to cases arising from electronic commerce. In *Zippo,* the defendant operated an online news service, which collected information and payments from, and contracted with, subscribers in the plaintiff's jurisdiction, all via the Internet. In holding that personal jurisdiction over the defendant was proper in the plaintiff's home state, the *Zippo* court distinguished among interactive, semi-interactive, and passive websites:

> The likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users of foreign jurisdictions. A passive Web site that does little more than make information available to those who

are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo Mfg. Co.,* 952 F.Supp. at 1124. This Court finds that the MBS website falls within the "middle ground" because although individuals cannot pay for MBS products over the website, they are able to fill out an order form, and thereby exchange information with the website. In accordance with *Zippo,* the Court must examine the level of interactivity and commercial nature of the exchange of information that occurs on the MBS website.

According to Mr. Garguilo's affidavit, MBS has approximately twenty customers, none of whom is located in Georgia, and MBS has never received a purchase order from anyone in Georgia. Although the website allows customers to fill out an electronic order form, it does not allow customers to make payments or complete orders. Additionally, the MBS website has never received any e-mail from anyone in Georgia, nor has MBS sent any e-mail via its website to anyone in Georgia.[2] There is nothing on the website showing an intent to reach out to persons living in Georgia, and there is no evidence that any Georgia residents have done business with MBS, either through the Internet or otherwise. Under these circumstances, the Court concludes that the MBS website fails to furnish a Georgia contact adequate to support personal jurisdiction

2. Barton Southern has provided no evidence to refute these MBS assertions. While the Court recognizes that Barton Southern has not had the opportunity to engage in discov-ery, it sees no reason to doubt the assertions contained in Mr. Garguilo's affidavit, given the size of the company, its small number of customers, and its New York location.

over MBS in the Georgia courts. *See Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 400–401 (4th Cir. 2003) (finding no personal jurisdiction where the information on the defendant's semi-interactive website was not targeted at individuals in the forum state).

### 2. Personal jurisdiction based on Mr. Garguilo's contacts with Barton Southern

MBS does not dispute that Mr. Garguilo contacted Barton Southern on several occasions, discussed the possibility of becoming a distributor of Barton Southern's products, and purchased several manhole protection devices from Barton Southern. Rather, MBS argues that these conversations and purchases do not support the exercise of personal jurisdiction over MBS because these activities are not related to the trademark claims alleged in the Complaint.[3] MBS argues that because the Complaint does not assert a claim arising out of Mr. Garguilo's conversations with Barton Southern or his purchases of Barton Southern's products, these contacts are insufficient to support personal jurisdiction by Georgia courts.

■ It is well established that in order for the minimum contacts requirement to be met, the contacts must be related to the plaintiff's cause of action. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n. 6 (11th Cir.1999). "[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia,*

S.A., 466 U.S. 408, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ Here, no activities related to the trademark claims are alleged to have occurred in Georgia. The trademark infringement claims set forth in the Complaint are unrelated to Mr. Garguilo's 2000 and 2001 communications with Barton Southern, and are also unrelated to his purchases of Barton Southern's products. Even though the parties may have established a commercial relationship involving certain, limited contacts in Georgia, Barton Southern's claims for trademark infringement do not stem directly from those Georgia contacts. Thus, MBS's contacts with Georgia are not sufficient to satisfy due process, and this Court is without personal jurisdiction. *See Hartoy Inc. v. Thompson*, 2003 WL 21468079, *3, 2003 U.S. Dist. LEXIS 3185 at *8–9 (finding that the defendant's submission of eighty orders by phone and mail to the plaintiff evidenced a "commercial relationship" but did not form the basis of plaintiff's trademark infringement claims and could not, therefore, support personal jurisdiction).

### CONCLUSION

■ Because neither jurisdiction nor venue properly lies in this forum, the Court, in the interest of justice, finds that transfer pursuant to 28 U.S.C. § 1406(a) is appropriate. *See* 28 U.S.C. § 1406(a) (authorizing a district court to transfer a case laying venue in the wrong division or district to any district or division in which it could have been brought); *see also Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (finding that Section 1406(a) authorizes transfer of

---

**3.** MBS also argues that the contacts were made on behalf of a non-party and cannot, therefore be attributed to MBS. The Court has assumed, for purposes of this motion, that Mr. Garguilo's personal contacts with Barton Southern can be attributed to MBS, despite the fact that the evidence shows that those contacts were made on behalf of Meydeg Machine Company.

cases "whether the court in which it was filed had personal jurisdiction over the defendants or not"). Accordingly, Defendant MBS's motion to dismiss [3–1] is DENIED, and its motion to transfer [3–2] is GRANTED. All other pending motions are DENIED AS MOOT. This cause is hereby TRANSFERRED, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Eastern District of New York.