**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0581. AMERICAN COLLEGE CONNECTION, INC. v. BERKOWITZ.

DILLARD, Judge.

In this civil action, Jessica Berkowitz, a Georgia resident, filed suit against American College Connection, Inc. ("ACC"), a company based primarily in Nebraska, seeking, *inter alia*, a declaratory judgment and damages for breach of contract. On interlocutory appeal, ACC contends that the trial court erred in denying its motion to dismiss Berkowitz's complaint for lack of personal jurisdiction. For the reasons set forth *infra*, we affirm.

At the outset, we note that a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction.[1] Furthermore,

---

[1] *See Easterling v. Easterling*, 231 Ga. 90, 90 (1) (200 SE2d 267) (1973); *Catholic Stewardship Consultants, Inc. v. Ruotolo Assocs., Inc.*, 270 Ga. App. 751,

when the motion is decided without an evidentiary hearing and based solely upon the written submissions of the parties, as it was here, "any disputes of fact must be resolved in the light most favorable to the party asserting the existence of personal jurisdiction, and we review the decision of the trial court de novo."[2]

Viewed in the light most favorable to Berkowitz, the record shows that ACC is a company incorporated in Nebraska that was created and is solely owned by former University of Nebraska swimming coach Richard Paine. Relying on Paine's extensive experience and contacts with swimming coaches across the country, ACC engages in the business of assisting student-athletes in gaining entrance to college and university athletic programs and in obtaining financial aid to support their educational goals. Generally, ACC obtains clients from referrals by parents of student-athletes, who have previously used the company's services. Prospective student-athlete clients can then use ACC's website to create a profile of their athletic and academic achievements. Thereafter, Paine and his staff use this information to

---

752 (608 SE2d 1) (2004) (punctuation omitted); *Scovill Fastners v. Sure-Snap Corp.*, 207 Ga. App. 539, 539 (428 SE2d 435) (1993).

[2] *Paxton v. Citizens Bank & Trust of W. Ga.*, 307 Ga. App. 112, 113 (704 SE2d 215) (2010); *accord Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286, 286 (656 SE2d 898) (2008).

create an admissions package that is then submitted on behalf of the student-athlete client to colleges and universities throughout the country. Additionally, during the entirety of the recruitment process, ACC continues advocating on their clients' behalf.

In 2007, Berkowitz, a resident of Georgia, was coaching swimming in the Atlanta area and operating a business that was similar to ACC's business, assisting student-athletes. That summer, Berkowitz and ACC began discussing collaboration and later began negotiating an agreement, under which Berkowitz would receive commissions for successfully referring student-athletes to ACC. Ultimately, on August 9, 2007, Berkowitz and ACC entered into an independent consultant/contractor agreement, which provided that Berkowitz would procure referrals of prospective student-athlete clients exclusively for ACC and that she would be compensated for such referrals. On that same day, Berkowitz also signed an agreement pledging that she would not compete with ACC or provide services for any of its competitors for a period of three years in the event her contractor agreement was terminated.

Over the course of the next six years, Berkowitz worked with ACC, recruiting student-athletes in Georgia and assisting in the development of clients' admission

packages. However, in late 2013, Berkowitz, while still under contract with ACC, allegedly created a competing business. Consequently, on December 22, 2013, ACC disabled Berkowitz's access to her ACC email account as well as the company's website. Shortly thereafter, on December 31, 2013, ACC contacted Berkowitz, via email, informed her that she was in violation of the non-compete agreement, and demanded that she cease all contact with ACC clients and all work in direct competition with ACC.

On January 6, 2014, Berkowitz filed suit against ACC in the Superior Court of Fulton County. In her complaint, she sought a declaratory judgment that the non-compete agreement was unenforceable under Georgia law and damages (in the form of unpaid commissions) for ACC's alleged breach of the independent consultant/contractor agreement. Subsequently, ACC filed an answer and a motion to dismiss, arguing that the trial court lacked personal jurisdiction because ACC had not transacted business in the State as contemplated by Georgia's Long Arm Statute.[3] Berkowitz filed a response, and the trial court held a non-evidentiary hearing on the issue, after which it denied ACC's motion but granted a certificate of immediate review. We then granted ACC's interlocutory application, and this appeal follows.

---

[3] *See* OCGA § 9-10-90 *et seq*.

In its sole enumeration of error, ACC contends that the trial court erred in denying its motion to dismiss Berkowitz's complaint for lack of personal jurisdiction. Specifically, it argues that jurisdiction is lacking because it did not transact business in the State as contemplated by Georgia's Long Arm Statute. We disagree.

Georgia's Long Arm Statue allows the courts of this State to exercise personal jurisdiction over a nonresident defendant "if in person or through an agent, he or she . . . [t]ransacts any business with this [S]tate."[4] And nearly ten years ago, in *Innovative Clinical & Consulting Servs. v. First National Bank of Ames*,[5] the Supreme Court of Georgia explained that "OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State . . . to the maximum extent permitted by procedural due process."[6] In doing so, the Supreme Court overruled all prior cases that failed to "accord the appropriate breadth to the construction of the 'transacting any business' language of OCGA § 9-10-91 (1)."[7]

---

[4] OCGA § 9-10-91 (1).

[5] 279 Ga. 672 (620 SE2d 352) (2005).

[6] *Id.* at 675 (punctuation omitted); *see also*

[7] *Id.* at 676.

5

In determining the limits of procedural due process, this Court applies a three-part test:

> Jurisdiction exists on the basis of transacting business in this [S]tate if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this State, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this State does not offend traditional notions of fairness and substantial justice.[8]

We analyze the first two prongs of this test to determine whether "a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction."[9] And if such minimum contacts are found, we then analyze the third prong of the test to consider whether "the exercise of jurisdiction is 'reasonable'—that is, to ensure that it does not result solely from 'random,' 'fortuitous' or 'attenuated' contacts."[10] Importantly, the application of the minimum-

---

[8] *Paxton*, 307 Ga. App. at 115-16 (punctuation omitted); *accord Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517-18 (1) (631 SE2d 734) (2006).

[9] *Paxton*, 307 Ga. App. at 116 (punctuation omitted); *accord ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 534 (1) (680 SE2d 571) (2009).

[10] *Paxton*, 307 Ga. App. at 116 (punctuation omitted); *accord ATCO Sign & Lighting*, 298 Ga. App. at 534 (1).

contacts rule will "vary with the quality and nature of the defendant's activity[.]"[11] Nevertheless, it is essential in each case that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[12]

In the case *sub judice*, through the affidavits of its owner Richard Paine, ACC avers that it is not registered to do business in Georgia and does not own property or maintain a bank account within the State. But this by no means ends our inquiry. Indeed, as our Supreme Court has explained, "nothing in subsection (1) [of OCGA § 9-10-91] requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State."[13] To the contrary, Georgia allows the assertion of long-arm jurisdiction over nonresident defendants based on "business conducted through postal, telephonic, and *Internet contacts*."[14]

---

[11] *Aero Toy Store*, 279 Ga. App. at 518 (1) (punctuation omitted); *accord Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 49 (1) (581 SE2d 609) (2003).

[12] *Aero Toy Store*, 279 Ga. App. at 518 (1) (punctuation omitted); *accord Stuart*, 261 Ga. App. at 49 (1).

[13] *Innovative Clinical*, 279 Ga. at 675; *accord Amerireach.com, LLC v. Walker*, 290 Ga. 261, 270 (2) (719 SE2d 489) (2011); *Paxton*, 307 Ga. App. at 116 (1).

[14] *Paxton*, 307 Ga. App. at 116 (1) (punctuation omitted) (emphasis supplied); *accord ATCO Sign & Lighting*, 298 Ga. App. at 534 (1); *see also Home Depot*

7

And a "single event" may be a sufficient basis if "its effects within the forum are substantial enough."[15]

As previously noted, ACC operates a website through which student-athletes across the country (including those residing in Georgia) can and do register to become clients. And in *Aero Toy Store, LLC v. Grieves*,[16] this Court noted that decisions in other jurisdictions have "developed recognizing the technological revolution ushered in by the Internet and utilizing a sliding scale for determining whether a nonresident has submitted to a state's long arm jurisdiction by establishing the requisite minimum contacts through Internet-based activity."[17] Adopting that sliding-scale mode of analysis, we explained that

*Supply, Inc. v. Hunter Management LLC*, 289 Ga. App. 286, 289 (656 SE2d 898) (2008) (holding that "even where a nonresident has no physical presence in Georgia, intangible contacts, such as telephone communications, can be sufficient to establish 'minimum contacts' which meet the constitutional standard for the exercise of personal jurisdiction.").

[15] *Crossing Park Props., LLC v. JDI Fort Lauderdale, LLC*, 316 Ga. App. 471, 476 (729 SE2d 605) (2012) (punctuation omitted); *accord Robertson v. CRI, Inc.*, 267 Ga. App. 757, 760 (601 SE2d 163) (2004).

[16] 279 Ga. App. 515.

[17] *Id.* at 522 (1).

8

[a]t one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.[18]

Here, ACC's website is, at the very least, certainly interactive in that it allows prospective, as well as current, student-athlete clients to set up an online account and input their academic, athletic, and financial information, so that ACC can, in turn, create admissions packages to be submitted to universities and colleges across the country. Indeed, as ACC acknowledges, some of its student-athlete clients are, in fact, residents of Georgia. Furthermore, ACC hired Berkowitz, a Georgia resident, to assist

---

[18] *Id.* (punctuation omitted); *accord Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 FSupp 1119, 1124 (III) (A) (2) (W.D. Pa. 1997).

the company in obtaining additional clients from Georgia, which she did, and, importantly, Berkowitz's cause of action stems from a dispute regarding the procurement of those very clients.[19]

Nevertheless, ACC argues at great length that Berkowitz was an independent contractor, rather than its agent, and therefore, her work in Georgia cannot be imputed to ACC so as to support the contention that the company had sufficient minimum contacts with the State. However, with regard to the term "agent" in the minimum-contacts context under OCGA § 9-10-91, we are "not dealing with the traditional 'principal-agency' theory of respondeat superior."[20] Rather we are concerned with whether a forum state may "exercise personal jurisdiction over a nonresident defendant based upon the 'minimum contact' theory[.]"[21] And with the relaxation of

_____

[19] *See Paxton*, 307 Ga. App. at 115-16 (noting that the plaintiff's cause of action must arise from or be connected with the defendant's acts or transactions in Georgia).

[20] *Cont'l Research Corp. v. Reeves*, 204 Ga. App. 120, 123 (1) (419 SE2d 48) (1992) (punctuation omitted).

[21] *Cont'l Research Corp.*, 204 Ga. App. at 123 (1) (citation and punctuation omitted); *see Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (66 SCt 154, 90 LE 95 (1945) (holding that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice" (punctuation omitted)).

the due-process criteria, the "*jurisdictional distinction* between agents and independent contractors has begun to fade."[22] But even more importantly, here, regardless of whether Berkowitz acted as an agent or merely an independent contractor, as noted *supra*, ACC, via its website, had several clients in Georgia even before Berkowitz was hired. Given these circumstances, and applying our Supreme Court's more expansive interpretation of the "transacting any business" provision of our Long Arm Statute,[23] we conclude that the trial court did not err in determining that ACC has sufficient minimum contacts with the State of Georgia to warrant the exercise of personal jurisdiction over it in this case.[24] Accordingly, we affirm the trial court's denial of ACC's motion to dismiss.

*Judgment affirmed. Ellington, P. J., and McFadden, J., concur*.

---

[22] *Cont'l Research Corp.*, 204 Ga. App. at 123-24 (1) (citation and punctuation omitted); *accord Hollingsworth v. Cunard Line Ltd.*, 152 Ga. App. 509, 513 (263 SE2d 190) (1979).

[23] *See Innovative Clinical*, 279 Ga. at 675-76.

[24] *See Aero Toy Store, LLC*, 279 Ga. App. at 523-24 (1) (holding that nonresident automobile seller, who regularly solicited business in Georgia via an interactive website and, in fact, sold plaintiff the car at issue in the lawsuit, had sufficient minimum contacts with Georgia to warrant the exercise of personal jurisdiction in plaintiff's breach of contract action, even though seller did not have offices in Georgia and did not derive substantial revenue from sales in Georgia).

11