**SECOND DIVISION**
**DOYLE, C. J.,**
**BARNES, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 7, 2016**

# In the Court of Appeals of Georgia

A16A0663. WEATHERS et al. v. DIENIAHMAR MUSIC, LLC et   DO-030
   al.

DOYLE, Chief Judge.

In a dispute involving a music publishing business, Eddie Weathers and his company, All-Weather, LLC (collectively "Weathers"), sued Dieniahmar Music, LLC ("DML"), EMI April Music, Inc., EMI Blackwood Music, Inc.,[1] Willie Carter, and Jermaine D. Mauldin a/k/a Jermaine Dupri ("Mauldin"), alleging claims for breach of contract, fraud, conversion, breach of fiduciary duty, tortious interference with a contract, and slander of title. Weathers appeals from the dismissal of his claims, contending that the trial court erred because (1) Weathers has demonstrated a basis

---

[1] The EMI defendants are referred to collectively as "EMI."

for personal jurisdiction over EMI under Georgia's Long Arm Statute;[2] (2) Weathers pleaded sufficient facts to allege breach of contract claims against Carter, Mauldin, and DML; (3) Weathers pleaded sufficient facts to allege fraud claims against Carter, Mauldin, and DML; and (4) the trial court applied the wrong standard to decide the defendants' motions to dismiss for failure to state a claim.[3] For the reasons that follow, we affirm in part, reverse in part, and remand the case.

"On appeal, we review a trial court's decision to grant or deny a motion to dismiss de novo. In reviewing the grant of a motion to dismiss, an appellate court must construe the pleadings in the light most favorable to the appellant with all doubts resolved in the appellant's favor."[4]

As alleged in the complaint, in June 2005, Weathers and Mauldin co-founded a music publishing company, DML, and were the only two members of the company,

---

[2] OCGA § 9-10-90 et seq.

[3] Weathers does not challenge the dismissal of his claims for conversion, breach of fiduciary duty, tortious interference with a contract, or slander of title as to Carter, Mauldin, and DML. Therefore, those claims are deemed abandoned. See *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401 (2) (526 SE2d 82) (1999) (matters not enumerated as error are deemed abandoned).

[4] (Citation and punctuation omitted.) *Surette v. Henry County Bd. of Tax Assessors*, 332 Ga. App. 457, 458 (773 SE2d 416) (2015).

each having 50 percent equity. In March 2006, DML, Mauldin, and EMI executed an amendment to a pre-existing co-publishing agreement resulting in EMI paying DML royalties and for other music publication rights for music developed by DML ("Co-Publishing Agreement"). As part of this process, Mauldin allegedly represented that he was the sole owner of DML, but the complaint also alleges that EMI was aware of Weathers's equity in DML, and Mauldin and Weathers were each paid $75,000 as an advance on the deal.

Weathers managed the day-to-day operations of DML, and Mauldin recruited recording artists and song writers. EMI paid DML royalty payments to publish music from the DML catalogue. All of the monies paid by EMI to DML allegedly were paid to Mauldin, and in 2008, Weathers received a payment of $275,752.97 representing two years of back payments of his share under the Co-Publishing Agreement. Between 2008 and 2011, Weathers received 50 percent of all royalty payments.

Weathers alleges that in 2011 he became aware that he still was not receiving his full share of monthly payments made by EMI to DML. Without consulting Weathers, Mauldin had sought and received multiple advances, in $100,000 increments, from EMI to DML. In April 2013, when Weathers asked Mauldin about certain missing payments, Mauldin informed him that he was considering selling the

3

DML catalogue to EMI for $500,000. Mauldin allegedly promised to pay Weathers 50 percent of the net proceeds of the sale, but this included a reduction for a recent $100,000 advance payment, resulting in $400,000 net proceeds.

In July 2013, Mauldin sold DML to EMI "without the permission, consent, or authorization of Weathers." Weathers was dissatisfied with the sale price, but could not get in touch with Mauldin. When he finally did, Mauldin confirmed the sale and, along with Carter (Mauldin's business manager), told Weathers that the sale proceeds had been placed in a trust and that Weathers would receive $250,000 within 30 days. That month, Mauldin transferred $10,000 to Weathers. The next month, Mauldin received another $10,000, but Weathers alleges he never received full payment on proceeds from the sale and past due royalties.[5]

Weathers and All-Weather, LLC, sued DML, EMI, Mauldin, and Carter. The defendants answered, and each moved to dismiss for failure to state a claim, with EMI also asserting lack of personal jurisdiction. Following a hearing, the trial court granted EMI's motion on the ground of lack of personal jurisdiction and the

---

[5] Weathers claims that the $20,000 payments reduced what he was already owed for royalty payments.

remaining defendants' motions to dismiss for failure to state a claim. Weathers now appeals.

1. Weathers challenges the trial court's ruling that it lacked personal jurisdiction over EMI. Based on the record before us, we conclude that the trial court erred by ruling that Weathers "failed to present sufficient admissible evidence to establish that EMI, a nonresident, has engaged in conduct or business invoking the long-arm statute."

As an initial matter,

> [w]hen a defendant moves to dismiss for lack of personal jurisdiction, he has the burden of proving that he is not subject to the jurisdiction of the court. Where the motion is decided without an evidentiary hearing and based solely upon the written submissions of the parties . . . , any disputes of fact must be resolved in the light most favorable to the party asserting the existence of personal jurisdiction, and we review the decision of the trial court de novo.[6]

The trial court noted in its order, without citation to legal authority, that it considered "all matters of record . . . [and] heard the oral argument of all those parties present at the hearing . . . ," but it is not clear from the record what evidence, if any,

---

[6] (Citation omitted.) *Paxton v. Citizens Bank & Trust of West Ga.*, 307 Ga. App. 112, 113 (704 SE2d 215) (2010).

5

EMI submitted. Further, as noted above, Weathers did submit an affidavit supporting his argument in favor of the court's jurisdiction over EMI. To the extent that the trial court dismissed EMI because Weathers failed to "present sufficient admissible evidence" demonstrating personal jurisdiction, it erred because it was EMI's burden to demonstrate the court's lack of jurisdiction.

> Turning to the merits of the jurisdiction question,

> Georgia's Long Arm Statute[, OCGA § 9-10-91 (1),] permits the exercise of personal jurisdiction over a nonresident defendant if he, personally or through an agent, "transacts any business within this State." In *Innovative Clinical &c. Svcs. v. First Nat. Bank &c.*,[7] our Supreme Court explained that "OCGA § 9-10-91(1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State to the maximum extent permitted by procedural due process, and it overruled all prior decisions that interpreted "transacts any business within this State" more narrowly.[8]

In doing so, the Supreme Court gave a literal interpretation to the phrase "transacts any business," and noted that prior cases had failed "to accord the appropriate breadth

---

[7] 279 Ga. 672, 675 (620 SE2d 352) (2005).

[8] (Citation and punctuation omitted.) *Paxton*, 307 Ga. App. at 115.

6

to the construction of" that phrase.[9] Therefore, Georgia's long-arm jurisdiction under OCGA § 9-10-91 (1) is broadly construed and bound only by notions of procedural due process.

> In determining the limits of procedural due process, this Court applies a three-part test: Jurisdiction exists on the basis of transacting business in this State if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this State, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this State does not offend traditional notions of fairness and substantial justice. We analyze the first two prongs of this test to determine whether a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction. And if such minimum contacts are found, we then analyze the third prong of the test to consider whether the exercise of jurisdiction is "reasonable" – that is, to ensure that it does not result solely from random, fortuitous[,] or attenuated contacts. Importantly, the application of the minimum-contacts rule will vary with the quality and nature of the defendant's activity. Nevertheless, it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.[10]

---

[9] *Innovative Clinical &c. Svcs.*, 279 Ga. at 675-676.

[10] (Footnotes and punctuation omitted.) *American College Connection, Inc. v. Berkowitz*, 332 Ga. App. 867, 870 (775 SE2d 226) (2015).

7

(a) *Purposeful act or transaction in Georgia*. Here, EMI argues that it never physically conducted business or signed any contract in Georgia, relying on its assertion that it only conducted limited business with DML using the telephone, mail, and Internet. But

> nothing in subsection (1) of OCGA § 9-10-91 requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State. To the contrary, Georgia allows the assertion of long-arm jurisdiction over nonresident defendants based on business conducted through postal, telephonic, and Internet contacts. And a single event may be a sufficient basis if its effects within the forum are substantial enough.[11]

The record before us shows that EMI's relevant contact with Georgia stems in part from the Co-Publishing Agreement with DML. That agreement created an ongoing relationship whereby DML, a Georgia business co-owned and operated by Georgia residents, would develop and broker musical talent (also Georgia residents) for profitable publication by EMI elsewhere. This relationship resulted in multiple, ongoing payments to DML for a variety of continued uses of artistic work identified and developed by DML over a period of ten years. Further, EMI's subsequent

---

[11] (Punctuaiton, footnotes, and emphasis omitted). Id. at 870-871.

8

purchase of Georgia-based DML establishes additional contact with Georgia. Also, there is evidence that, as part of its music publishing business, EMI leased a recording studio located in Atlanta, and its employees operated out of the studio to conduct EMI's business. These facts demonstrate purposeful acts and business transacted in Georgia on the part of EMI.[12]

(b) *Cause of action is connected with EMI's Georgia activity*. It is undisputed that the present litigation arose because of EMI's co-publishing agreement and purchase of DML. Weathers's status as a co-owner of DML demonstrates a clear connection between EMI's contacts with Georgia and Weathers's claims.

(c) *Exercise of jurisdiction in Georgia is reasonable*. Finally, EMI's arrangement with DML and its resulting activities in Georgia provided fair warning that it may be subject to the jurisdiction of a Georgia court.[13] EMI purchased music publication rights from a Georgia company, made routine royalty payments to the

---

[12] See *American College Connection, Inc.*, 332 Ga. App. at 872 (finding personal jurisdiction was proper because the foreign defendant hired "a Georgia resident . . . to assist the company in obtaining additional clients from Georgia").

[13] See *Crossing Park Properties, LLC v. JDI Fort Lauderdale, LLC*, 316 Ga. App. 471, 477 (729 SE2d 605) (2012) ("negotiating with a Georgia broker and sending documents to a Georgia resident for execution in Georgia provided fair warning that it might be subject to suit in Georgia").

Georgia company, leased a studio in Georgia to develop Georgia artists, and ultimately purchased the Georgia company it dealt with.[14] "Georgia has an interest, as does every state, in providing its own citizens with a convenient forum for redressing injuries wrought by nonresidents who have sought the state's citizens out for the purpose of business gain."[15] Accordingly, we conclude that the trial court erred by dismissing EMI for lack of personal jurisdiction. The judgment dismissing EMI on jurisdictional grounds is reversed, and the case is remanded for consideration of EMI's motion to dismiss on the merits of Weathers's claims against EMI.[16]

2. Weathers also contends that the trial court erred by dismissing the breach of contract claims against Carter, DML, and Mauldin. We agree in part.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to

---

[14] See *American College Connection, Inc.*, 332 Ga. App. at 872.

[15] (Punctuation omitted.) *Crossing Park Properties*, 316 Ga. App. at 477.

[16] See, e.g., *McRae v. Hogan*, 317 Ga. App. 813, 821 (3) (b) (732 SE2d 853) (2012) (remanding for consideration of issues not ruled upon by the trial court).

10

warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.[17]

To state a claim for breach of contract, Weathers's complaint must generally allege a factual famework showing

parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate. Each of these four essential terms must be certain. In order that it may allege an agreement, a petition must set forth a contract of such certainty and completeness that either party may have a right of action upon it.[18]

(a) *Breach of contract as to Carter*. As alleged in the complaint, Carter's role over the course of the relevant transactions was to act as Mauldin's business manager. The complaint does not allege any contractual agreement between Carter and Weathers, nor does it allege that Carter, acting for himself, wrongfully withheld

---

[17] (Citation and punctuation omitted.) *Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*, 334 Ga. App. 826, 826-827 (780 SE2d 689) (2015).

[18] (Citation and punctuation omitted.) *Laverson v. Macon Bibb County Hosp. Auth.*, 226 Ga. App. 761, 762 (487 SE2d 621) (1997), quoting OCGA § 13-3-1.

money owed Weathers pursuant to a contract with Carter. Accordingly, there is no set of provable facts within the framework alleged by the complaint that would result in Carter's liability to Weathers for breach of contract, and the trial court correctly dismissed this claim against Carter.

(b) *Breach of contract as to Mauldin and DML.* The essence of Weathers's complaint is that (1) Mauldin was paid revenue from EMI, which revenue he did not properly share with Weathers, (2) Mauldin wrongfully sold DML, and (3) Mauldin did not fully share the proceeds of the sale with Weathers. These claims arise from the alleged co-ownership of DML by Weathers and Mauldin and the operating agreement governing their relationship in DML. We note that the record does not contain these agreements, so our review is confined to the allegations in the complaint.[19] Nevertheless, viewed in the proper light on a motion to dismiss, the facts alleged in the complaint, if later proven, could demonstrate liability on the part of

---

[19] We note that Weathers's appellate brief states that a number of exhibits, including the DML operating agreement and the Co-Publishing Agreement, were attached to his complaint but are not present in the appellate record. Certain responses in the defendants' answers imply that they were served with the exhibits along with the complaint. Nevertheless, Weathers states that the trial court clerk has no record of those exhibits, and he has not made any attempt to supplement the appellate record. Our review is, as always, based on the record before us, and we resolve the issues presented in this appeal by reference to the allegations in the complaint, despite the absence of any attached exhibits.

Mauldin, for example, for failing to share with Weathers the revenue paid to DML by EMI as agreed in the operating agreement, or for failing to share the proceeds of the sale of DML according to the equity allocation in the operating agreement.[20] As noted above,

> [a] motion to dismiss should only be granted if the allegations of the complaint, construed most favorably to the plaintiff, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts. Stated somewhat differently, a motion to dismiss should not be granted unless the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.[21]

Similarly, with respect to DML itself, the facts alleged could, if proven, support a breach of contract claim, for example, based on the fact that the company, under the control of Mauldin, failed to properly compensate Weathers for his role in the company. We are not in a position at this point to parse out the relative liability between Mauldin and DML, but the record at this stage alleges potential claims for

---

[20] See, e.g., *Webb v. Bank of America, N.A.*, 328 Ga. App. 62, 63 (761 SE2d 485) (2014) (facts alleged in plaintiff's complaint could support claim for breach of contract).

[21] (Footnote and punctuation omitted.) *Ewing v. City of Atlanta*, 281 Ga. 652, 653 (2) (642 SE2d 100) (2007).

breach of contract as to both. Accordingly, the trial court erred by dismissing the breach of contract claims against Mauldin and DML.[22]

3. Weathers next contends that the trial court erred by dismissing his fraud claims against Mauldin, DML, and Carter. We agree.

As noted above, "[t]he tort of fraud requires a willful misrepresentation of a material fact, made to induce another to act, upon which such person acts [or avoids acting] to his injury."[23]

> Although fraud must be pled with particularity under OCGA § 9-11-9 (b), a complaint alleging fraud should not be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief. Rather than move to dismiss, a defendant seeking greater particularity may either move for a more definite statement or wait for the outcome of discovery.[24]

---

[22] See generally *Webb*, 328 Ga. App. at 64 ("[F]actual evidence which may or may not be developed during discovery . . . can be considered on a subsequent motion for summary judgment.")

[23] (Punctuation omitted.) *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602, 603 (1) (448 SE2d 737) (1994).

[24] (Citations and punctuation omitted.) *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 284 Ga. App. 387, 394 (2) (b) (643 SE2d 864) (2007).

Here, Weathers's complaint alleged that Mauldin, Carter, and DML (through Mauldin) knowingly made misrepresentations about placing the proceeds of the sale of DML into an allegedly nonexistent trust and that Weathers would be paid $250,000 from that trust within 30 days. Weathers alleged that he relied on these misrepresentations, and as a result of not being paid, he lost revenue and other business opportunities. Viewing these allegations in the light most favorable to Weathers, as is proper, we conclude that Weathers might be able to prove a set of facts that would support his fraud claims. Accordingly, the trial court erred by dismissing the fraud claims as to Carter, Mauldin, and DML at this stage of the proceedings.[25]

4. Finally, Weathers contends that the trial court erred by applying the wrong standard to the defendants' motions to dismiss, thereby incorrectly placing a burden upon Weathers to proffer evidence to overcome their motions. It is well-settled that a motion to dismiss under OCGA § 9-11-12 (b) (6) for failure to state a claim

> should be granted only when: the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and the movant establishes that the claimant could not possibly introduce evidence

---

[25] See id.

15

within the framework of the complaint sufficient to warrant a grant of the relief sought.[26]

Here, the trial court's dismissal orders state that the trial court "considered all matters of record in this action . . . and has determined that good cause exists for the relief" requested by the defendants. In the order addressing Weathers's failure to state his claims, the trial court concluded that Weathers "*failed to present sufficient admissible evidence to establish*"[27] the claims asserted in the complaint. But no discovery had been conducted, and the defendants did not submit evidence in support of their motions to dismiss. Instead,

> in ruling on the motion to dismiss, the trial court was required to view the allegations and documents in the pleadings in [Weathers's] favor [regardless of the absence of evidence] and then limit its determination to whether there was any possibility that [he] would be able to produce sufficient evidence at trial to prove that [he] was entitled to relief.[28]

---

[26] (Punctuation omitted.) *Common Cause/Ga. v. City of Atlanta*, 279 Ga. 480, 481 (614 SE2d 761) (2005).

[27] (Emphasis supplied.)

[28] *Islam v. Wells Fargo Bank, N.A.*, 327 Ga. App. 197, 201 (1) (757 SE2d 663) (2014). See also *Speedway Motorsports, Inc. v. Pinnacle Bank*, 315 Ga. App. 320, 323 (1) (727 SE2d 151) (2012) ("[A] plaintiff has no obligation to anticipate and plead away any defenses in his complaint.").

Although a trial court has the option to consider evidence attached to a motion to dismiss and brief in support thereof, when [the court] does so it converts the motion to dismiss into a motion for summary judgment, governed by OCGA § 9-11-56. In accordance with this procedure, the trial court has the burden of informing a plaintiff that it will be considering exhibits attached to the defendant's motion to dismiss and that the plaintiff would have no less than 30 days within which to submit his own evidence in response to the motion for summary judgment.[29]

The trial court did not employ this procedure here, and no evidence was submitted in support of the motions to dismiss.[30] In light of our rulings in Divisions 2, any

---

[29] (Citation and punctuation omitted.) *Babalola v. HSBC Bank, USA*, 324 Ga. App. 750, 751 n.4 (751 SE2d 545) (2013).

[30] With respect to the motion to dismiss on personal jurisdiction grounds, Weathers did submit an affidavit addressing personal jurisdiction in Georgia over both EMI defendants. Consideration of matters outside the pleadings on a 12 (b) (2) motion to dismiss for lack of personal jurisdiction does not convert the motion to one for summary judgment. See, e.g., *Church v. Bell*, 213 Ga. App. 44, 45 (443 SE2d 677) (1994) ("Under OCGA § 9-11-12 (b), . . . only motions under OCGA § 9-11-12 (b) (6), failure to state a claim upon which relief can be granted, are converted to motions for summary judgment when matters outside the pleadings are considered.") (punctuation omitted); *Behar v. Aero Med Intl., Inc.*, 185 Ga. App. 845 (1) (366 SE2d 223) (1988) ("A motion to dismiss for lack of personal jurisdiction is a motion in abatement and not a motion in bar. Thus, motions to dismiss for lack of personal jurisdiction cannot be disposed of as motions for summary judgment." (citations omitted)). Therefore, this affidavit did not alter the procedural posture of the motion to dismiss.

resulting error was not harmful as to every issue. For purposes of remand as to EMI, we emphasize the proper standard.

*Judgment affirmed in part and reversed in part; case remanded with direction.*

*Barnes, P. J. and Boggs, J., concur*.