**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 27, 2018**

# In the Court of Appeals of Georgia

A18A0198. PASCARELLI et al. v. KOEHLER.

BROWN, Judge.

We granted the application for interlocutory review filed by Frank and Marina Pascarelli following the trial court's grant of James Koehler d/b/a TKO d/b/a Courtyard Casper's ("Koehler") motion to dismiss. They contend that the trial court should have concluded it had personal jurisdiction over Koehler, who independently owns and operates a Marriott International, Inc. franchise located in Casper, Wyoming. For the reasons explained below, we affirm.

In Georgia, a defendant filing a motion to dismiss based upon a lack of personal jurisdiction bears the burden of proof. *Home Depot Supply v. Hunter Mgmt.*, 289 Ga. App. 286 (656 SE2d 898) (2008). And "to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere

allegations, but must also submit supporting affidavits or documentary evidence."

(Citations and punctuation omitted.) *Drumm Corp. v. Wright*, 326 Ga. App. 41 (755

SE2d 850) (2014).

> Where as here, the motion was decided on the basis of written
> submissions alone, any disputes of fact in the written submissions
> supporting and opposing the motion to dismiss are resolved in favor of
> the party asserting the existence of personal jurisdiction, and the
> appellate standard of review is nondeferential.

(Citations omitted.) *Crossing Park Properties v. JDI Fort Lauderdale*, 316 Ga. App.

471 (729 SE2d 605) (2012).

So construed, the record reflects that in April 2012, Frank Pascarelli, who

resides in Marietta, Georgia, was traveling to Casper, Wyoming on business for his

employer, the Centers for Disease Control ("CDC"). While making arrangements for

this trip, Pascarelli found the Marriott franchise owned by Koehler and made online

reservations for his stay. According to Pascarelli, he selected the Marriott franchise

owned by Koehler based on its status as a "preferred hotel" with the CDC and the

amenities offered that were apparent from the website.

After checking into and spending the first night in the hotel, Pascarelli woke

up to find "an enormous amount" of bed bug bites. Pascarelli sought treatment at an

urgent care facility on two occasions while in Wyoming. Upon returning to Georgia, Pascarelli went to the hospital because his wounds had become infected with MRSA, requiring surgery and a two-week hospital stay.

On March 24, 2014, Pascarelli and his wife filed the current negligence action in Cobb County Superior Court against Marriott International, Inc., Koehler, and various other entities associated with Koehler's hotel. All defendants collectively moved to dismiss on the ground of lack of personal jurisdiction. The trial court granted the motion as to all defendants except franchisor Marriott International, finding that Marriott International's continuous and systematic contacts in Georgia warranted the exercise of jurisdiction. The trial court concluded that Koehler's Internet activity in Georgia did not create the necessary minimum contacts to impose personal jurisdiction. Alternatively, the trial court concluded that even if Koehler's Internet activity amounted to sufficient contacts, it would offend the constitutional guarantee of due process to allow the Pascarellis to bring suit against Koehler in Georgia. The trial court certified its order for immediate review, and we granted the Pascarellis' application for interlocutory review.[1]

---

[1] The Pascarellis only sought interlocutory review of the trial court's dismissal of Koehler.

3

On appeal, the Pascarellis assert that the trial court erred by concluding it lacked personal jurisdiction over Koehler and by making negative inferences adverse to the finding of personal jurisdiction.

1. Georgia's Long Arm Statute, OCGA § 9-10-91, "delineate[s] the circumstances in which a court of this state may exercise personal jurisdiction over a nonresident. Paragraph (1) authorizes the exercise of such jurisdiction where the nonresident 'transacts any business within this state.'" (Punctuation omitted.) *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517 (1) (631 SE2d 734) (2006). The Supreme Court of Georgia has construed subsection (1) "as reaching only to the maximum extent permitted by procedural due process." (Citations and punctuation omitted.) *Innovative Clinical & Consulting Svcs. v. First Nat. Bank of Ames, Iowa*, 279 Ga. 672, 675 (620 SE2d 352) (2005). In determining the boundaries of due process, we must apply the following three-part test:

> [J]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

4

(Citations and punctuation omitted.) *Amerireach.com v. Walker*, 290 Ga. 261, 269 (719 SE2d 489) (2011). We look to

> the first two factors to determine whether a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction. If such minimum contacts are found, we move to the third prong of the test to consider whether the exercise of jurisdiction is reasonable — that is, to ensure that it does not result solely from random, fortuitous or attenuated contacts.

(Citations and punctuation omitted.) *Paxton v. Citizens Bank & Trust of West Georgia*, 307 Ga. App. 112, 116 (1) (704 SE2d 215) (2010). Our Supreme Court has explained that "nothing in subsection (1) [of the Long Arm Statute] requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State." *Innovative Clinical*, supra, 279 Ga. at 675. And "Georgia allows the assertion of long-arm jurisdiction over nonresidents based on business conducted through postal, telephonic, and Internet contacts." (Citations and punctuation omitted.) *Paxton*, supra, 307 Ga. App. at 116 (1); accord *American College Connection v. Berkowitz*, 332 Ga. App. 867, 871 (775 SE2d 226) (2015). While

> [t]he application of the minimum contacts rule will vary with the quality and nature of the defendant's activity[,] . . . it is essential in each case

5

that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

(Punctuation omitted.) *Aero Toy*, supra, 279 Ga. App. at 518 (1).

In this case, it is uncontroverted that Koehler, a resident of South Dakota, owned, operated, and managed the Marriott franchise hotel located in Casper, Wyoming. The record shows that Marriott International operates a website which allows franchisees such as Koehler to input information about their individual franchise hotels. Using this information, Marriott International maintains a website which advertises franchise hotels and allows a prospective traveler to peruse individual hotels and their offered amenities. The website also has a centralized reservation and booking system. Koehler does not maintain a website independent from Marriott International's website for his franchise hotel, and his independent advertising for the hotel focuses upon Wyoming and Colorado. Koehler's franchise agreement with Marriott International requires him to pay a percentage of room revenue into a marketing fund administered by Marriott International. The fund is used for television commercials and digital advertising of the various Marriott International brands and not of any specific Marriott franchise hotel. A representative

6

of Koehler's hotel franchise testified that he did not know if the marketing fund was used to pay for Marriott International's central website for reservations. From 2010 to 2013, Georgia residents generated approximately $40,000 in revenue for Koehler's hotel, accounting for less than one percent of the total revenue for each year.

As grounds for personal jurisdiction in Georgia, the Pascarellis primarily rely on the listing for Koehler's franchise hotel on the Marriott International website and the ability of residents to book their hotel reservation on the website. The Pascarellis assert that Koehler is benefitting from Marriott International's "name, flagship, and infrastructure to maintain a website whereby Georgia guests book their . . . reservations at [Koehler's hotel]. . . ." Koehler argues that any Internet activity or Georgia advertising by Marriott International cannot be imputed to Koehler to support a finding of sufficient minimum contacts with Georgia. For purposes of our analysis, we assume, without deciding, that Marriott International's Internet activity can be used to determine the extent of Koehler's contacts with Georgia.

When analyzing specific[2] personal jurisdiction based on online interactions via an Internet website, many jurisdictions utilize the "sliding scale" first articulated in *Zippo Mfg. Co. v. Zippo Dot Com*, 952 FSupp. 1119, 1124 (III) (A) (2) (W.D. Pa. 1997). See, e.g., *Abdouch v. Lopez*, 829 NW2d 662, 671 (2) (a) (Neb. 2013). The sliding scale represents a continuum in which "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, supra, 952 FSupp. at 1124 (III) (A) (2). In *Aero Toy*, supra, 279 Ga. App. at 522 (1), this Court adopted that sliding-scale mode of analysis, explaining that

> at one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with

---

[2] When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising general jurisdiction over the defendant. Conversely, when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising specific jurisdiction over the defendant.

(Citations omitted.) *Aero Toy*, supra, 279 Ga. App. at 521 (1).

8

residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

(Citation, punctuation, and footnote omitted.) Id.; see also *American College*, supra, 332 Ga. App. at 871.

Here, the website in question is neither entirely passive nor entirely interactive. While the website goes beyond simply sharing information, the ability to make an online reservation does not transform it into the "extensive interactive" website the Pascarellis claim. It falls somewhere in the middle of the sliding scale, requiring an examination of "the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." (Citation, punctuation, and footnote omitted.) *Aero Toy*, supra, 279 Ga. App. at 522 (1).

9

Both the Pascarellis and Koehler cite our decision in *Aero Toy* in support of their respective positions. In that case, the nonresident defendant advertised cars for auction on eBay's website. 279 Ga. App. at 515-516. Through this website, buyers purchased automobiles which defendant personally shipped. Id. We affirmed the trial court's denial of the defendant's motion to dismiss, concluding that the nonresident defendant was subject to personal jurisdiction in Georgia because it had "operated an interactive website through which it ha[d] reached out to, and done business with, persons in Georgia." Id. at 523-524. Critical to our holding was the fact that the defendant had shipped an automobile, without the use of a carrier as an agent, into Georgia to be operated here. Id. at 523.

We find the current case is distinguishable from *Aero Toy* and other cases in which goods are ordered through a defendant's website and then shipped to Georgia. See, e.g., *Sarvint Technologies v. Omsignal, Inc.*, 161 FSupp.3d 1250, 1260-1261 (II) (B) (1) (N.D. Ga. 2015) (holding personal jurisdiction under Long Arm Statute was proper over nonresident defendant who accepted online orders through its "interactive" website and shipped its goods into Georgia). Cf. *Barton Southern Co. v. Manhole Barrier Systems*, 318 FSupp.2d 1174, 1177-1178 (1) (N.D. Ga. 2004) (finding that nonresident defendant's semi-interactive website, which allowed

customers to fill out order forms for goods but not complete transactions online, failed to support personal jurisdiction, in part, because there was "nothing on the website showing an intent to reach out to persons living in Georgia"). In those Internet cases, the resident can bring about the transmission of the goods into the forum state through the order alone. A hotel website allows an online reservation to be made, but this is preliminary to the individual traveling outside the forum state to use the service provided by the hotel. The purpose of the former is fulfilled when the goods reach their destination in the forum state while the purpose of the latter is fulfilled once the resident reaches the hotel outside the forum state. See *Lanser v. MGM Mirage*, No. 4:09CV877-DJS, 2009 WL 4559278, at *6 (E.D. Mo., November 30, 2009).[3]

Faced with the same issue, courts in other jurisdictions have concluded that a hotel's maintenance of an Internet website with a reservation system alone did not

---

[3] The Pascarellis also assert that like the defendant in *Aero Toy*, Koehler received "substantial and continuous funds" from Georgia residents, who generated over $40,000 in revenue for Koehler's hotel from 2010 to 2013. However, we cannot determine from the record what portion of this revenue resulted from reservations made online by guests in Georgia. Additionally, we are not persuaded that this negligible percentage of revenue (less than one percent of total revenue per year) from Georgia residents requires a different result.

constitute sufficient minimum contacts to assert specific personal jurisdiction over the hotel. See *Diem v. Quinn Hotel Praha*, No. H-10-2848, 2012 WL 524182, at \*2-5 (S.D. Tex., February 15, 2012) (holding that foreign hotel did not have minimum contacts with the forum state on the basis of its "intermediate[ly]" interactive website through which plaintiff made her hotel reservation); *Lanser*, supra, No. 4:09CV877-DJS, 2009 WL 4559278, at \*2 (holding that plaintiffs' use of a Nevada hotel's website to make reservations did not constitute sufficient contacts to subject hotel to specific personal jurisdiction in Missouri); *Bell v. Imperial Palace Hotel/Casino*, 200 FSupp.2d 1082, 1087-1088 (E.D. Mo. 2001) (holding that a Nevada hotel's website through which visitors could make reservations did not give rise to personal jurisdiction because the hotel did "no more than provide a website from which those who choose to seek out the site may make a reservation"); *Rodriguez v. Circus Circus Casinos*, No. 00 Civ. 6559(GEL), 2001 WL 21244, at \*2 (S.D.N.Y., January 9, 2001) (holding that nonresident defendant's website with hotel reservation system did not constitute "transacting business" such that it was subject to specific personal jurisdiction in New York). We are persuaded by the reasoning of these cases that an Internet "presence" with online reservation capability does not satisfy the minimum contacts requirement for a tort case arising out of conduct that subsequently occurred

12

outside the forum state.[4] And other than the website, the record contains no evidence showing that Koehler advertised or solicited business in Georgia. Therefore, the trial court did not err in determining that it could not exercise personal jurisdiction over Koehler in this case.[5]

2. In their second enumeration of error, the Pascarellis assert that the trial court erred in construing certain factual ambiguities against them when any disputes of fact should have been resolved in favor of the party asserting personal jurisdiction; specifically, whether the room was paid for online or in person at the hotel and whether Pascarelli or a CDC travel specialist made the reservation. Because we review the trial court's order on a motion to dismiss de novo and construe all factual

---

[4] The Pascarellis urge us to consider *Day v. Harrah's Hotel & Casino Las Vegas*, No. 10cv1746–WQH–JMA, 2010 WL 4568686 (S.D. Cal., November 2, 2010), as persuasive authority in support of their argument. They point to the fact that, like the plaintiff in *Day*, Pascarelli participates in the Marriott Rewards program. Id. at *4-5 (2). However, this is not evidence of "affirmative conduct" on the part of Koehler. Id. at *5 (2) (a). And as pointed out in *Day*, the "[p]urposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff." Id. We are likewise unpersuaded that online pop-up advertisements for Koehler's hotel parallel the "direct solicitation" of guests in the forum state in *Day*. Id.

[5] *American College*, supra, 332 Ga. App. at 868-869, 872, does not require a different result because in that case, the cause of action stemmed from a noncompete agreement with a Georgia resident hired by the defendant to recruit clients in Georgia. We find no analogous contacts in the present case.

disputes in favor of the party asserting personal jurisdiction, the Pascarellis' second enumeration of error is rendered moot by our holding in Division 1. Accordingly, we affirm the trial court's grant of Koehler's motion to dismiss.

*Judgment affirmed. Miller, P. J., and Andrews, J., concur.*

14