**SECOND DIVISION**
**RICKMAN, P. J.,**
**GOBEIL and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**October 29, 2025**

# In the Court of Appeals of Georgia

A25A1463. BECKER v. TEACHERS RETIREMENT SYSTEM OF GEORGIA.

RICKMAN, Presiding Judge.

The Teachers Retirement System of Georgia ("TRS") sued Saundra Becker to recover retirement benefits it deposited into a joint bank account held by Becker and her spouse, a former employee of Georgia Southern University, following her spouse's death. During the litigation, the trial court denied Becker's motion to dismiss for lack of personal jurisdiction, and subsequently granted TRS's motion for summary judgment and denied Becker's motion for summary judgment. Becker appeals from the orders evincing those decisions. For the reasons that follow, we reverse.

In its suit against Becker, TRS sought the return of $59,351.71 it paid by electronic transfer to the financial institution where Becker's spouse, David

Addington, maintained a joint account with Becker. TRS alleged that under Addington's retirement plan, his TRS benefits should have terminated the month of his death, and that it was entitled to the return of all benefits paid thereafter. TRS asserted claims for breach of contract and money had and received. The complaint alleged that Becker was a resident of Oregon and was subject to the jurisdiction of the court pursuant to OCGA § 9-10-91, but asserted no facts to support the exercise of personal jurisdiction. Becker responded by moving to dismiss the complaint based on a lack of personal jurisdiction. The parties then engaged in limited discovery on the issue of jurisdiction.

Following discovery, Becker filed an amended motion to dismiss for lack of personal jurisdiction as well as a supporting affidavit. TRS filed an amended complaint, asserting claims for money had and received, conversion, and breach of contract. In its amended complaint, TRS alleged that the trial court had personal jurisdiction over Becker under Georgia's Long Arm Statute because Becker (1) transacts business within this state; (2) committed a tortious injury in this state caused by an act or omission outside this state; and (3) owned, used, and possessed real property located in this state. The trial court conducted oral argument on Becker's

motion to dismiss and subsequently denied it, ruling that Becker had failed to prove a lack of personal jurisdiction but providing no further explanation.

After engaging in additional discovery, both parties filed motions for summary judgment. Following oral argument on the motions, the trial court signed an order prepared by counsel for TRS. The order granted TRS's motion for summary judgment, denied Becker's motion for summary judgment, and awarded damages to TRS. This appeal followed.

1. Becker contends that the trial court erred in denying her motion to dismiss for lack of personal jurisdiction. She argues that she is not a Georgia resident and is not subject to jurisdiction under Georgia's Long Arm Statute.

A defendant who files a motion to dismiss based on lack of personal jurisdiction bears the burden of proving lack of jurisdiction. See *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990). Even so, the motion "must be granted if there are insufficient facts to support a reasonable inference that defendant can be subjected to the jurisdiction of the court." Id. To demonstrate a lack of jurisdiction, a "defendant may raise matters not contained in the pleadings. However, when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits

or citations to evidentiary material in the record." Id. And "to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence." Id.

If the motion to dismiss "is decided without an evidentiary hearing and based solely upon the written submissions of the parties, any disputes of fact must be resolved in the light most favorable to the party asserting the existence of personal jurisdiction[.]" (Citation and punctuation omitted.) *Weathers v. Dieniahmar Music*, 337 Ga. App. 816, 819 (1) (788 SE2d 852) (2016). Our review of the trial court's decision is de novo. See id.

A Georgia court may exercise personal jurisdiction over a nonresident defendant if the defendant has "committed some act or engaged in some activity set forth in Georgia's Long Arm Statute," see OCGA § 9–10–91, and the exercise of jurisdiction over that defendant under the Long Arm Statute comports "with the requirements of due process." *Lima Delta Co. v. Global Aerospace*, 325 Ga. App. 76, 79 (752 SE2d 135) (2013). And "[d]ue process requires that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign

sovereign," making the relevant question "whether a defendant could reasonably expect to be haled into court in a particular forum, based on its contacts with the state." (Citations and punctuation omitted.) *Sol Melia, SA v. Brown*, 301 Ga. App. 760, 763 (1) (688 SE2d 675) (2009).

(a) We first address TRS's reliance on subsection (1) of Georgia's Long Arm Statute, which extends personal jurisdiction over a nonresident defendant if that party, acting personally or through an agent, "[t]ransacts any business within this state." OCGA § 9-10-91 (1). Our Supreme Court has construed subsection (1) as reaching only "to the maximum extent permitted by procedural due process." (Citation and punctuation omitted.) *Innovative Clinical & Consulting Svcs. v. First Nat. Bank of Ames, Iowa*, 279 Ga. 672, 675 (620 SE2d 352) (2005). As a result,

> jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Amerireach.com v. Walker*, 290 Ga. 261, 269 (2) (719 SE2d 489) (2011), quoting *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517–518(1) (631 SE2d 734) (2006).

5

We analyze the first two prongs of the test "to determine whether a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction." (Citations and punctuation omitted.) *Sullivan v. Bunnell*, 340 Ga. App. 283, 286 (1) (797 SE2d 499) (2017). If such minimum contacts are found, we move to the third prong of the test "to consider whether the exercise of jurisdiction is reasonable—that is, to ensure that it does not result solely from random, fortuitous or attenuated contacts." (Citations and punctuation omitted.) Id.

Here, the record shows that since 2003, Becker has lived in four different states: Georgia (2003 to 2007), South Carolina (2007 to 2010), California (2010 to 2014), and Oregon (2014 to present). She met Addington after he had retired and moved from Georgia to South Carolina, and they got married in 2009. While living in California, Becker and Addington opened a joint bank account, which they continued to use when they moved to Oregon. TRS made monthly payments to Addington as part of his retirement and beginning in 2010, TRS electronically deposited those payments into the joint account.[1] When Addington died on June 2, 2021, 76-year-old Becker became the sole account holder. Shortly after Addington's death, Becker called the human

---

[1] Addington retired in 1998 and began receiving monthly retirement payments from TRS that year.

resources department at Georgia Southern University and informed them of his death, but TRS was not notified. TRS continued to pay benefits into the account, which Becker erroneously assumed she was entitled to receive after Addington's death.

During jurisdictional discovery, TRS learned that Becker's activities in Georgia included working as a registered nurse from 2003 to 2007 and investing in a 401K retirement plan as a benefit of that employment. Becker also owned and paid taxes on a residential home in Georgia from 2004 to 2010. In addition, Becker owned and paid taxes on a condominium in Georgia from 2004 to 2021, rented the condominium through a Georgia real estate management company, and received rental payments from the real estate management company. Becker was also the beneficiary of a health savings account ("HRA") that Addington had established while employed by the university.[2] Becker testified that she learned about the account after her husband's death and that she had not utilized it for medical expenses or benefits.

With respect to the "transacts business" component of the Long Arm Statute, we conclude that Becker's actions are sufficient to establish the first prong of the jurisdictional test, but we find that the second prong of the test has not been satisfied

---

[2] The HRA account is not administered by TRS.

because TRS's claims do not arise out of or relate to Becker's Georgia activities. TRS is pursuing retirement benefits it deposited into the California bank account opened by Becker and Addington.[3] The retirement benefits at issue were deposited between July 2021 and March 2023, while Becker was living in Oregon. TRS's claims do not arise out of or result from Becker's prior employment in Georgia, her prior ownership of a residential home in Georgia, or the HRA she inherited from Addington. Nor do they arise out of or result from Becker's ownership interest in the Georgia condominium, which she sold in September 2021, or the transactions related to that ownership. Although TRS alleged that Becker used funds from the joint account to pay expenses she incurred after Addington's death that were associated with renting and selling the Georgia condominium property, Becker averred in her affidavit and testified at her deposition that any condominium expenses were deducted by the property management company before she received the rental income. She further

---

[3] Unlike the situation in *Employees' Retirement System of Ga. v. Pendergrass*, 344 Ga. App. 888, 890 (1) (812 SE2d 322) (2018), which is physical precedent only, Becker had no involvement in designating the account where the TRS benefits were deposited. In 2011, Addington requested that TRS send his benefits to the California bank account.

testified that the costs of selling the property came out of the sales proceeds, and that she did not pay anything personally. Becker admittedly used the joint account to pay two months of HOA dues for the condominium property after Addington's death, but the record shows that the monthly TRS payments were not the only funds deposited into the account and Becker testified at her deposition that she did not use the TRS funds to make any payments or transfer any funds to Georgia, make any payments related to a real estate transaction in Georgia, or pay for any goods or services to entities or persons located in Georgia.

Under the circumstances, we conclude that Becker did not have sufficient minimum contacts with Georgia to warrant the exercise of personal jurisdiction over her based on transacting business within the state. See generally *Dora-Clayton Agency v. Forjay Broadcasting Corp.*, 193 Ga. App. 340, 341-342 (2) (387 SE2d 617) (1989) (Under the second prong of the test, the cause of action must arise from the transaction of business in this state).

(b) TRS also relies on OCGA § 9-10-91 (3), which provides that a Georgia court may exercise personal jurisdiction over any nonresident

> as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner

as if he or she were a resident of this state, if in person or through an agent, he or she . . . [c]ommits a tortious injury in this state caused by an act or omission outside this state [only] if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

Our Supreme Court has recognized that these required contacts with the state "may preclude a Georgia court from exercising personal jurisdiction over the nonresident to the fullest extent permitted by constitutional due process." *Innovative Clinical & Consulting Svcs.*, 279 Ga. at 674.

With respect to its tort claims, TRS alleged that while living in Oregon, Becker withdrew funds that it deposited into her California bank account from July 2021 to March 2023, the funds at issue belong to TRS, Becker was not entitled to retain the funds, TRS demanded return of the funds, and Becker refused its demand. See generally *Think Dev. System v. Cloudious, LLC*, 369 Ga. App. 58, 67 (5) (891 SE2d 426) (2023) ("A claim for money had and received contains the following elements: a person has received money of the other that in equity and good conscience he should not be permitted to keep; demand for repayment has been made; and the demand was refused.") (citation and punctuation omitted); *Rubenstein v. Palatchi*, 359 Ga. App.

139, 142 (1) (857 SE2d 81) (2021) ("To establish a conversion claim, a plaintiff must demonstrate that (1) he or she owns title to or has the right to possess the personal property at issue; (2) the defendant actually possesses the property; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return it."). For a Georgia court to exercise personal jurisdiction over a nonresident tortfeasor, subsection (3) requires that the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." OCGA § 9-10-91 (3); see *Innovative Clinical & Consulting Svcs.*, 279 Ga. at 676, n.4. ("subsection (3) requires 'regular,' 'persistent' or 'substantial' contact with this State").

The record shows that Becker last lived and worked in Georgia in 2007, has not been physically present in Georgia since 2010, and her Georgia condominium property was vacant and non-rent-producing for several months prior to its sale, which took place shortly after Addington's death. Thus, Becker's contacts with Georgia near the time the alleged causes of action arose were attenuated, not regular or persistent. In addition, TRS's tort causes of action do not arise from any of Becker's activities in Georgia, as required by the plain language of the statute. Under the circumstances, we

11

conclude that Becker is not subject to personal jurisdiction in Georgia pursuant to OCGA § 9-10-91 (3). See generally *Intercontinental Svcs. of Delaware v. Kent*, 343 Ga. App. 567, 576 (2) (807 SE2d 485) (2017) (holding that there was no basis for jurisdiction under OCGA § 9-10-91 (3) where nonresident company's relationship with Georgia company did not establish a "persistent course of conduct in Georgia," and the record did not show that nonresident company regularly solicited business in Georgia or derived substantial income from services provided in Georgia); OCGA § 9-10-91 (authorizing personal jurisdiction over nonresident with respect to "cause of action *arising from* any of the acts, omissions, ownership, use, or possession enumerated in this Code section") (emphasis supplied).

(c) TRS also alleged that the exercise of personal jurisdiction over Becker is authorized under OCGA § 9-10-91 (4), which provides that a Georgia court may exercise personal jurisdiction over a nonresident who "[o]wns, uses, or possesses any real property situated within this state." This Court has held that "[t]he mere fact of title ownership of realty in Georgia will not support the exercise of personal jurisdiction. Jurisdiction must be predicated on the existence of ties among the defendants, this state, and the litigation." (Citation and punctuation omitted.) *Intl.*

*Capital Realty Investment v. West*, 234 Ga. App. 725, 728 (3) (507 SE2d 545) (1998).

OCGA § 9-10-91 (4) does not, however, "require that ownership, use or possession exist at the time an action is commenced. Rather, the statute merely requires that [the] cause of action arise from the ownership, use or possession of real property situated within this state." *Hart v. DeLowe Partners*, 147 Ga. App. 715, 716 (2) (A) (250 SE2d 169) (1978). Thus, the fact that Becker no longer owned property in Georgia when this action was filed is not determinative under this subsection of the Long Arm Statute. What is determinative is the fact that the causes of action asserted by TRS do not arise out of Beckner's ownership, use, or possession of any real property situated within this state. Accordingly, personal jurisdiction over Becker cannot be predicated on OCGA § 9-10-91 (4). See *Stanton v. Harris*, 356 Ga. App. 554, 557 (1) (b) (848 SE2d 186) (2020) (holding that jurisdictional requirements of OCGA § 9-10-91 (4) were not satisfied where automobile collision giving rise to litigation did not occur because defendant owned, used, or possessed real property situated within this state); *Murray v. Reese*, 210 Ga. App. 352, 354 (2) (436 SE2d 79) (1993) (holding that exercise of personal jurisdiction over a non-resident owner of real estate under OCGA § 9-10-91 (4) requires that the claim arise out of the ownership of the property).

Because Becker is not a Georgia resident and is not subject to personal jurisdiction under Georgia's Long Arm Statute with respect to the causes of action asserted by TRS, the trial court erred in denying Becker's motion to dismiss for lack of personal jurisdiction.

2. Given our holding in Division 1, we need not address Becker's remaining enumerations of error.

*Judgment reversed. Davis, J. concurs. Gobeil, J., concurs in judgment only.*